J-S35012-20

2021 PA Super 63

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :          PENNSYLVANIA
                               :
              v.               :
                               :
                               :
                               :
CHRISTOPHER SNYDER             :
                               :
           Appellant           :   No. 2060 EDA 2019

Appeal from the Judgment of Sentence Entered June 20, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-2658-2018

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

OPINION BY BOWES, J.:                          **FILED:  APRIL 9, 2021**

Christopher Snyder appeals from his June 20, 2019 judgment of sentence imposed after a jury found him guilty of corruption of minors, indecent assault without consent, indecent assault of person unconscious, and indecent assault with a person less than thirteen years of age.  After careful review, we affirm Appellant's conviction, affirm in part and vacate in part Appellant's judgment of sentence, and remand for resentencing.

The trial court provided the following factual summary of this case:

In the fall of 2017, [Appellant] was living in a house with the then 12-year-old victim, S.F., along with the victim's family . . . . [Appellant] was a close friend to S.F.'s father and a close friend to the entire family.

One night, S.F. was awoken from sleep to [Appellant] rubbing her inner leg and vaginal area.  At first[,] she was confused about

---

[*] Retired Senior Judge assigned to the Superior Court.

what was happening, and looked at him and said, "What are you doing?" [Thereafter, Appellant left her room.]

S.F. was scared to tell her family about what happened. A couple of months after the assault in February of 2018, S.F. was able to open up to some school friends. The incident came to [S.F.'s mother's] attention when she received a phone call from the school principal.

The matter was reported to law enforcement. S.F. spoke to Detective Gloria Hatcher of the Horsham Township Police Department. S.F. was also interviewed by Meghan Kerper of the Mission Kids Child Advocacy Center.

On March 12, 2019, [Appellant] proceeded to a jury trial where at the conclusion thereof a jury found him guilty of the aforementioned charges.

Trial Court Opinion, 9/18/19, at 1-2.

A jury trial commenced on March 12, 2019. At its conclusion, the jury found Appellant guilty of the aforementioned charges. On July 20, 2019, he was sentenced to nine to twenty months of imprisonment followed by eight years of probation. As part of his sentence, Appellant was ordered to pay $500 in non-mandatory fines along with the costs of prosecution.

Appellant was also found to be subject to lifetime tier-based registration under Subchapter H of the Pennsylvania Sentencing Code as a consequence of his conviction under 18 Pa.C.S. § 3126(a)(7). *See* 42 Pa.C.S. §§ 9799.14(d)(8), 9799.15(a)(3) (categorizing indecent assault against a complainant "less than 13 years of age" as a Tier III offense, which requires registration for "the life of the individual"). Appellant was determined not to be a sexually violent predator ("SVP"), and he filed no post-sentence motions.

Appellant filed a timely appeal to this Court. Both he and the trial court timely complied with their obligations under Pa.R.A.P. 1925. Appellant raises the following issues for our consideration:

> 1. Were [Appellant's] due process rights violated when the Commonwealth set forth a four-month date range in the Bills of Information to prosecute him for a single incident but then shifted at trial the timeframe in which they alleged the single incident occurred, after the defense presented alibi evidence that covered dates in the Bills of Information?
>
> 2. Did the trial court commit a reversible error when it denied the requested prompt complaint instruction?
>
> 3. Was the portion of the sentence requiring [Appellant] to comply with [Subchapter H] illegal because the applicable statute, 42 Pa.C.S. §§ 9799.10-[.]41, violates both the Pennsylvania and Federal Constitutions?
>
> 4. Did the sentencing court err in assigning [Appellant] the costs of prosecution and a fine of $500 without consideration of his ability to pay?

Appellant's brief at 3.

Appellant's first issue concerns the dates listed on the information filed by the Commonwealth, which he characterizes as a claim arising under **Commonwealth v. Devlin**, 333 A.2d 888, 890 (Pa. 1975) ("[T]he date of the commission of the offense must be fixed with reasonable certainty."). This claim concerns the sufficiency of the evidence adduced by the Commonwealth, over which our standard and scope of review is well-established:

> When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient

to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to accord each witness' testimony and to believe all, part or none of the evidence. The Commonwealth may sustain its burden by proving every element of the crime by means of wholly circumstantial evidence. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Steele*, 234 A.3d 840, 845 (Pa.Super. 2020) (internal quotation marks and citations omitted).

Appellant's argument implicates the timeline presented in the Commonwealth's information, which he claims differed from the evidence at trial. *See* Appellant's brief at 11-12 ("[T]he dates on [the information] were not only arbitrary, but almost completely separate and distinct from the dates the Commonwealth attempted to prove at trial."). In pertinent part, the information set forth allegations that Appellant committed these offenses within a date range of November 1, 2017 through March 6, 2018. Appellant contends that the Commonwealth misled Appellant by "abandoning" these dates at trial after Appellant presented an alleged alibi. *Id*. Thus, Appellant asserts that this purported chronological shift invalidated his alibi defense. *See* Appellant's brief at 14-15 (quoting *Devlin*, *supra* at 891 n.1) ("[A] variance between the allegations of the indictment and the proof offered at trial will not be deemed fatal 'unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to

- 4 -

prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right.'").

The content and function of criminal informations is governed by Pennsylvania Rule of Criminal Procedure 560, which provides as follows with respect to allegations concerning the dates of charged offenses:

> (A) After the defendant has been held for court following a preliminary hearing or an indictment, the attorney for the Commonwealth shall proceed by preparing an information and filing it with the court of common pleas.
>
> (B) The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:
>
> . . . .
>
> (3) the date when the offense is alleged to have been committed if the precise date is known, . . ., provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient . . . .

Pa.R.Crim.P. 560. Consistent with this statutory language, the dates set forth in an information do not inextricably bind the Commonwealth to that timeline:

> [T]he date laid in the indictment is not controlling, but some other reasonably definite date must be established with sufficient particularity to advise the jury and the defendant of the time the Commonwealth alleges the offense was actually committed, and to enable the defendant to know what dates and period of time he must cover if his defense is an alibi[.]

**Devlin**, **supra** at 890.

We are also mindful of the following legal principles regarding the Commonwealth's burden to establish a reliable date as to the offense:

- 5 -

It is the duty of the prosecution to fix the date when an alleged offense occurred with reasonable certainty[.] The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense.

However, due process is not reducible to a mathematical formula, and the Commonwealth does not always need to provide a specific date of an alleged crime. Additionally, indictments must be read in a common sense manner and are not to be construed in an overly technical sense. Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. *See* Pa.R.Crim.P. 560(B)(3)

*Commonwealth v. Brooks*, 7 A.3d 852, 857-58 (Pa.Super. 2010) (internal quotation marks and some citations omitted).

While acknowledging that the victim in this case was unable to provide a precise date for the assault, we also note that "[w]hen a young child is the victim of a crime, it is often impossible to ascertain the exact date when the crime occurred. . . . If such children are to be protected by the criminal justice system, a certain degree of imprecision concerning times and dates must be tolerated." *Commonwealth v. Jette*, 818 A.2d 533, 535 (Pa.Super. 2003) (citing *Commonwealth v. Groff*, 548 A.2d 1237, 1242 (Pa.Super. 1988)). Thus, "for the purposes of a *Devlin* claim, the Commonwealth must be allowed a reasonable measure of flexibility when faced with the special difficulties involved in ascertaining the date of an assault upon a young child." *Groff*, *supra* at 1241.

Reviewing the certified record in this case, we cannot agree with Appellant's assertions that the Commonwealth's allegations at trial were

- 6 -

fatally dissimilar from those contained in the information. While the Commonwealth could not provide a precise date, the victim averred that the assault took place in the fall of 2017, while Appellant was living with the family. *See* N.T. Trial, 3/12/19, at 53-55. When pressed for details by both the Commonwealth and the defense, the victim clarified that the assault had taken place sometime from November 2 through November 22, 2017. *Id*. at 53-55, 70, 83. This testimony is in complete parity with the timeline averred in the criminal information filed by the Commonwealth. Stated simply, there is no discrepancy in the dates provided on the information and the evidence collectively presented at trial by the parties.

Moreover, Appellant's alibi explicitly relied upon the Commonwealth's timeline to rebut the assault allegations and asserted this defense at trial in a manner that was fully consistent with the chronology set forth in the Commonwealth's information and trial evidence. Indeed, Appellant's own testimony acknowledges that the assault allegations were centered upon November 2017. *See*, *e.g.*, N.T. Trial, 3/13/19, at 21, 24, 26. Appellant has "never asserted how the lack of specificity in the information or victim['s] testimony rendered him unable to prepare a defense to the charges brought

against him." ***Brooks***, ***supra*** at 859-60. Accordingly, we reject his insinuation that the Commonwealth hindered him in presenting a defense.[1]

Viewing the evidence in the light most favorable to the Commonwealth, we find that it established the date of Appellant's offense with "reasonable certainty" under ***Devlin*** and its progeny. ***Brooks***, ***supra*** at 859-60 (finding a victim's testimony sufficient to support the Commonwealth's information where the document averred that the defendant committed "sex offenses . . . during the summer months of 2001" and one of the victims testified at trial that "she recalled the abuse occurring when it was warm outside and she was wearing shorts"); ***see also Groff***, ***supra*** at 1242 (holding victim's testimony that alleged abuse had taken place "during the summer of 1985" was sufficient pursuant to ***Devlin***). No relief is due.[2]

---

[1] Appellant claims that he "was no longer living with the complainant" at the time of the assault. ***See*** Appellant's brief at 15. Appellant also introduced an unnamed receipt for household goods to establish that he had renovated and moved into a more-remote part of the victim's home in August 2017. These assertions oversimplify the living arrangements of the involved parties. The testimony at trial indicated that Appellant had moved from an upstairs bedroom to a "separate apartment" that was attached to the house, but which had its own entrance. ***See*** N.T. Trial, 3/12/19, at 106-07.

[2] Appellant argues that we should subject the victim's allegations to an increased level of scrutiny under ***Devlin*** simply by virtue of the fact that there was only a single incident of sexual assault. ***See*** Appellant's brief at 15 ("While the Commonwealth is given leeway in setting a date range for continuing courses of criminal behavior, this Court should be wary of over-extending that flexibility in the context of singular acts."). Contrary to Appellant's unsupported argument, the leeway granted to the Commonwealth in cases involving the allegations of child victims is not limited to cases involving continuous courses of conduct. No such bifurcated approach is present in, or supported by, the relevant case law.

Appellant's second claim concerns the trial court's refusal to issue a "prompt complaint" jury charge in this case. *See* Appellant's brief at 15-18. "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1286 (Pa.Super. 2018). "A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions." ***Commonwealth v. Thomas***, 904 A.2d 964, 970 (Pa.Super. 2006).

Appellant requested that the trial court issue a prompt complaint jury instruction in light of the victim having delayed disclosure of the assault for "approximately four months." *See* N.T. Trial, 3/13/19, at 6. The Commonwealth demurred that the victim's young age and testimony as to her lack of immediate comprehension regarding the nature of the assault augered in favor of not issuing the instruction. *Id*. at 9-10. The Commonwealth also noted that Appellant had served in a "parental role" by taking care of the victim when her parents were out of the house. *Id*. at 10. The trial court agreed that "the factors weigh in favor of not giving the instruction." *Id*. at 11. We find no fault in the trial court's refusal to give the instruction.

Our General Assembly has addressed the issue of prompt complaints from victims of crime, as follows:

Prompt reporting to public authority is not required in a prosecution under this chapter: Provided, however, [t]hat nothing in this section shall be construed to prohibit a defendant from introducing evidence of the complainant's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.

18 Pa.C.S. 3105. Consistent with this statutory language, this Court has explained that "[t]he prompt complaint instruction is based upon a belief that a victim of a violent assault would reveal the assault occurred at the first available opportunity." *Thomas*, *supra* at 970. However,

[t]he propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For example, where the victim of a sexual assault is a minor who may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication. This is especially true where the perpetrator is one with authority or custodial control over the victim.

*Id*. (internal citations and quotation marks omitteds).

Appellant asserts that the trial court committed reversible error in declining to issue the requested instruction, which he claims "would have imparted knowledge to the jury that the law offered support for Appellant to question the reliability of the complainant's untimely complaint." Appellant's brief at 18. We note, however, that this line of argument is not responsive to the threshold factors undergirding the trial court's ruling: the age and disposition of the victim. *Accord Thomas*, *supra* at 970. The touchstone regarding the propriety of issuing a prompt complaint instruction to the jury

- 10 -

is not whether it is beneficial to the defendant, but whether it is warranted under the facts of the case.[3]

We believe Appellant's case is fairly analogous to **Commonwealth v. Snoke**, 580 A.2d 295 (Pa.Super. 1990), wherein a five-year-old victim delayed reporting a sexual assault perpetrated by her father for approximately five months. In finding no fault with the trial court's refusal to give a prompt complaint instruction, this Court opined as follows:

> Where no physical force is used to accomplish the reprehensible assault, a child victim would have no reason to promptly complain of the wrong-doing, particularly where the person involved is in a position of confidence. Where such an encounter is of a nature that a minor victim may not appreciate the offensive nature of the conduct, the lack of a complaint would not necessarily justify an inference of a fabrication.

*Id*. at 299. Thus, this Court held that the trial court did not err in declining to issue a prompt complaint jury instruction in **Snoke** despite the victim's five-month delay in reporting a non-violent sexual assault.

The trial court explicitly cited these factors in declining to issue a prompt complaint instruction. **See** N.T. Trial, 3/13/19, at 10-11. As in **Snoke**, this

---

[3] As part of his discussion of this issue, Appellant asserts that the trial court erred by instructing the jury that the victim's testimony, if believed, was sufficient to convict Appellant of the charged offenses. **See** Appellant's brief at 17. Appellant's assertion ignores that it is well-established under Pennsylvania law that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." **Commonwealth v. Cramer**, 195 A.3d 594, 602 (Pa.Super. 2018). We discern no error in the trial court's instruction.

case involves a minor victim who was frightened and lacked a firm understanding of the objectionable nature of Appellant's actions. S.F. was twelve years old at the time of the assault in this case, and she testified to being "confused" and "[s]cared" in the aftermath of the assault.[4] *See* N.T. Trial, 3/12/19, at 60-62. Furthermore, Appellant had a close relationship with S.F. and her family. Specifically, the victim's mother testified that Appellant was often left "alone" to supervise the victim and her brother, *i.e.*, in a position of confidence or custodial control. *Id*. at 103. We also note that Appellant's actions do not appear to have been physically violent.

Given the victim's disposition, the extent of Appellant's relationship with her family, and the nature of the assault itself, the lack of a prompt complaint in this case does not reasonably lead to an inference of falsehood or fabrication on the part of the victim. Thus, we discern no legal error or abuse of discretion in the trial court's refusal to issue the requested jury instruction. *See*, *e.g.*, *Thomas*, *supra*, at 970; *Snoke*, *supra* at 299.

We turn now to Appellant's third issue, wherein he has asserted for the first time on appeal that Subchapter H of the Pennsylvania Sentencing Code violates the United States and Pennsylvania Constitutions.[5] *See* Appellant's

---

[4] Appellant had an opportunity to cross-examine the victim at length regarding the timeline of her disclosure. *See* N.T. Trial, 3/12/19, at 72-81.

[5] Appellant's arguments are directed at the constitutionality of the various iterations of Pennsylvania's sexual offender registration regime. In

- 12 -

brief at 19-36. Specifically, Appellant's arguments implicate constitutional issues that were discussed at length in our Supreme Court's holding in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020).

---

*Commonwealth v. Muniz*, 164 A.3d 1189, 1193 (Pa. 2017), *superseded by statute as stated in*, *Commonwealth v. Lacombe*, 234 A.3d 602, 607 n.4 (Pa. 2020), our Supreme Court declared these registration requirements were "punitive," and therefore could not be retroactively applied to individuals whose offenses predated enactment of the statute. Shortly thereafter, this Court relied upon *Muniz* to conclude that the provisions of the statute applicable to sexually violent predators ("SVPs"), were also unconstitutional. *See Commonwealth v. Butler*, 173 A.3d 1212, 1218 (Pa.Super. 2017) ("*Butler I*"), *reversed by*, 226 A.3d 972 (Pa. 2020) ("*Butler II*").

In response, the General Assembly passed significant amendments to SORNA that are commonly referred to as Acts 10 and 29. *See Butler II*, *supra* at 981 n.11. These legislative enactments bifurcated the regulatory scheme into two subchapters: (1) Subchapter H, or the statute formerly known as SORNA, which was amended to be applicable to individuals whose crimes were committed after December 20, 2012; and (2) Subchapter I, a new section of the Sentencing Code, which was drafted to be applicable to offenders whose predicate crimes were committed between April 22, 1996, and December 20, 2012. *See* 42 Pa.C.S. §§ 9799.11(c), 9799.52(1)-(2). Following these amendments, our Supreme Court held in *Lacombe*, *supra* at 626-27, that the registration requirements of Subchapter I do not constitute punishment. The High Court also overruled *Butler I* and held that the registration requirements of Subchapter H applicable to SVPs also do not constitute punishment. *Butler II*, *supra* at 993.

Neither *Lacombe* nor *Butler II* is applicable to Appellant's case. *Lacombe* is inapposite because Appellant is not within the class of registrants covered by Subchapter I, as his offense was committed after December 20, 2012. Additionally, "as *Butler II* involves provisions related to the SVP designation process, it is not relevant to [Appellant], who was not designated an SVP." *Commonwealth v. Torsilieri*, 232 A.3d 567, 572 n.2 (Pa. 2020). Until an authoritative ruling, the constitutionality of Subchapter H as to non-SVP offenders such as Appellant remains an unanswered question. *Id*. at 596.

The constitutionality of a statute presents a "pure question of law," over which our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Brooker**, 103 A.3d 325, 334 (Pa.Super. 2014). Our Supreme Court has also offered the following discussion of the burden borne by those seeking to invalidate a statutory scheme on constitutional grounds:

> In addressing constitutional challenges to legislative enactments, we are ever cognizant that "the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society," but also that "any restriction is subject to judicial review to protect the constitutional rights of all citizens." **In re J.B.**, 107 A.3d 1, 14 (Pa. 2014). We emphasize that "a party challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution." **Id**.

**Torsilieri**, **supra** at 575.

A brief review of the holding in **Torsilieri** is necessary to properly characterize Appellant's claims in this case. Torsilieri challenged his registration requirements under Subchapter H in post-sentence proceedings. The linchpin of his arguments consisted of expert scientific evidence indicating that "sexual offenders generally have low recidivism rates and questioning the effectiveness of sexual offender registration systems[.]" **Id**. at 574. Based largely upon this evidence, the trial court declared Subchapter H unconstitutional under a number of interrelated theories, including that Subchapter H impaired Torsilieri's "right to reputation" under the Pennsylvania

Constitution[6] by utilizing an "irrebuttable presumption" that all registrants

pose a high risk of recidivism. *Id*. at 574-75.

The *Torsilieri* trial court also concluded Subchapter H was "punitive"

pursuant to the seven factors set forth in *Kennedy v. Mendoza-Martinez*,

372 U.S. 144 (1963).[7] *Id*. at 588-94. This conclusion "inevitably resulted" in

a number of additional rulings:

> [T]he trial court concluded that (1) [Subchapter H] violated the dictates of [*Alleyne v. U.S.*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000),[8]] because it subjected offenders to increased registration provisions without a jury determining that the offender posed a risk of future dangerousness beyond a reasonable doubt; (2) the registration periods constituted illegal sentences in excess of the statutory maximum terms of incarceration; (3) the provisions resulted in an excessive sentence in violation of the federal and state constitutional provisions related to cruel and unusual punishments; and (4) [Subchapter H] violated the separation of powers doctrine by encroaching upon the judiciary's fact-finding and individualized sentencing responsibilities.

---

[6] "[E]very man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay." PA. CONST. Art. 1, § 11.

[7] The seven factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), examine whether the at-issue sanction: (1) involves an affirmative disability or restraint; (2) has historically been regarded as a punishment; (3) comes into play only on a finding of scienter; (4) will promote the traditional aims of punishment—retribution and deterrence; (5) applies to behavior that is already a crime; (6) has an alternative purpose that is rationally connected and assignable to it, and (7) appears excessive in relation to the alternative purpose assigned.

[8] "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. U.S.*, 570 U.S. 99, 103 (2013) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10, 490 (2000)).

*Id*. at 594.

On direct appeal, our Supreme Court determined that the trial court had correctly considered Torsilieri's scientific evidence. *Id*. at 584. However, the High Court ultimately remanded the case for further development of the record and arguments:

> [A]s the trial court did not have the benefit of the opposing science, if any, the evidence currently in the record does not provide a sufficient basis to overturn the legislative determination. Accordingly, we conclude that the proper remedy is to remand to the trial court to provide both parties an opportunity to develop arguments and present additional evidence and to allow the trial court to weigh that evidence in determining whether [Torsilieri] has refuted the relevant legislative findings supporting the challenged registration and notification provisions of Revised Subchapter H.

*Id*. at 596 (emphasis added). Thus, the holding in *Torsilieri* did not announce any new substantive law, but merely set the stage for future proceedings.

Unlike Torsilieri, Appellant did not raise his claims of constitutional dimension before the trial court. Rather, he first raised these arguments in his Rule 1925(b) concise statement, wherein he asserted a panoply of claims for relief that mirror those presented by the defendant in *Torsilieri*. *See* Appellant's Rule 1925(b) Statement, 8/7/19, at ¶ 6(a)-(h). "[C]onstitutional issues, including sentencing issues based upon the constitution, are waived if they are not properly raised in the trial court." *Commonwealth v. Howe*, 842 A.2d 436, 441 (Pa.Super. 2004); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on

- 16 -

appeal."). Indeed, this Court recently concluded that a defendant waived numerous constitutional arguments concerning whether Subchapter H creates "an irrefutable and irrebuttable presumption against the offender" by failing to raise the claims in the trial court. *See Commonwealth v. Reslink*, ___ A.3d ___, 2020 WL 7415959, at *3-*4 (Pa.Super. 2020).

Appellant has characterized his claims as uniformly implicating the legality of his sentence. *See* Appellant's brief at 2-3. As a general matter, "Rule 302(a)'s prohibition does not apply to claims of an illegal sentence." *Commonwealth v. Hodges*, 193 A.3d 428, 432-33 (Pa.Super. 2018) (citing *Commonwealth v. Barnes*, 151 A.3d 121, 122 (Pa. 2016)); *see also Commonwealth v. Wolfe*, 140 A.3d 651, 660 (Pa. 2016) ("Legality-of-sentence claims are not subject to the traditional waiver doctrine.").

Initially, we believe that Appellant's characterization of his constitutional arguments is overbroad.[9] Many of these claims for relief concern alleged due process violations predicated upon the Pennsylvania Constitution's reputation

---

[9] "[T]his Court has rejected the idea that all constitutional cases implicating sentencing raise legality of sentence concerns." *Commonwealth v. Lawrence*, 99 A.3d 116, 122 (Pa.Super. 2014). Rather, "the term illegal sentence is a term of art that our Courts apply narrowly, to a relatively small class of cases." *Id*. (internal citation and quotation marks omitted). Our Supreme Court's jurisprudence on this issue is "equally narrow," and generally provides that legality of sentence is only implicated "when a sentencing court's inherent, discretionary authority to wield its statutorily prescribed sentencing powers is supplanted, abrogated, or otherwise limited, . . . or the legislature's intent in fashioning a sentence has been potentially misapplied." *Commonwealth v. Foster*, 17 A.3d 332, 344 (Pa. 2011).

- 17 -

clause. *See* Appellant's brief at 19-24. However, this Court has historically rejected attempts to style due process claims as implicating the legality of a defendant's sentence. *See*, *e.g.*, *Commonwealth v. Wallace*, 533 A.2d 1051, 1053-54 (Pa.Super. 1987) (collecting cases). Moreover, our Supreme Court held in *Commonwealth v. Muniz*, 164 A.3d 1189, 1195 n.7 (Pa. 2017), *superseded by statute on separate grounds as recognized in Commonwealth v. Lacombe*, 234 A.3d 602, (Pa. 2020), that a defendant waived similar arguments under the reputation clause of the Pennsylvania Constitution by failing to raise them in the trial court.[10]

However, we also discern that Appellant asserts that Subchapter H is punitive under the *Mendoza-Martinez* factors and, therefore, violates the rule that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, *supra* at 103; *see* Appellant's brief at 24-36. Specifically, Appellant argues that registration constitutes punishment and is imposed based upon a fact that is not submitted to a jury and found beyond a reasonable doubt, *i.e.*, the presumption of recidivism present in Subchapter H. This portion of Appellant's argument **does** implicate the legality of his sentence. *See Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa.Super.

---

[10] In *Muniz*, *supra* at 1195 n.7, there was no indication that these claims implicated the legality of the defendant's sentence.

2014) (*en banc*) ("[A] challenge to a sentence premised upon *Alleyne* likewise implicates the legality of the sentence and cannot be waived on appeal.").

Nevertheless, we are constrained to find waiver under *Reslink*. In that case, Reslink asserted for the first time on appeal that Subchapter H creates "an irrefutable and irrebuttable presumption against the offender," which renders it unconstitutional. *Reslink*, *supra* at *3. He claimed that registration under Subchapter H constituted "cruel and unusual punishment" and also violated *Apprendi*, *supra* at 490. *Id*. It is beyond cavil that such claims implicate the legality of a defendant's sentence. *See Commonwealth v. Newman*, 99 A.3d 86, 91 (Pa.Super. 2014) ("[B]ecause a challenge to a sentence premised upon *Apprendi* implicates the legality of that sentence, it cannot be waived on appeal."); *Commonwealth v. Yasipour*, 957 A.2d 734, 740 (Pa.Super. 2008) ("[A]n appellant who challenges the constitutionality of his sentence of imprisonment on a claim that it violates his right to be free from cruel and unusual punishment raises a legality of sentencing claim since he is challenging the trial court's authority in imposing the sentence."). However, this Court found these legality-of-sentence issues waived due to Reslink's failure to raise them in the trial court. *See Reslink*, *supra* at *4.

After *Reslink*, even assuming, *arguendo*, that some of Appellant's constitutional claims sound in legality of sentence, we are compelled to find waiver of the balance of Appellant's constitutional arguments. Appellant did not raise these issues in the trial court, and *Reslink* has created an exception

to the typical rules governing Rule 302(a) waiver and claims aimed at allegedly illegal sentences.[11]  Thus, no relief is due on these waived issues.

Appellant's fourth issue concerns the $500 non-mandatory fine[12] and additional costs that Appellant was ordered to pay as part of the sentence imposed by the trial court.  **See** N.T. Trial, 6/20/19, at 31.  Specifically, Appellant argues that the trial court erred in failing to conduct an inquiry into his ability to pay before imposing these financial conditions.  **See** Appellant's brief at 36-40.  Appellant is separately challenging the propriety of imposing both fines **and** costs in his case.  **Id**. at 36-37.  Accordingly, we will address each claim in turn, beginning with the legality of the at-issue fines.

We begin our review with the following legal standards in mind:

> The scope and standard of review applied to determine the legality of a sentence are well established.  If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction.  An illegal sentence must be vacated.  In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

---

[11]  Although we are bound to follow **Commonwealth v. Reslink**, ____ A.3d ____, 2020 WL 7415959, at *3-*4 (Pa.Super. 2020), we note that **Reslink** constitutes an apparent inconsistency with respect to constitutional claims sounding in legality of sentence.  As such, **Reslink** runs counter to well-settled aspects of Pennsylvania law.  We read **Reslink** for the limited proposition that constitutional claims for relief directed at Pennsylvania's sexual offender registration regime that concern the presumption of recidivism discussed in **Torsilieri** are subject to waiver under Rule 302(a), regardless of whether that claim sounds in legality of sentence.

[12]  There is no indication that the fines imposed upon Appellant by the trial court were mandated by statute or by law.

*Commonwealth v. Dixon*, 161 A.3d 949, 951 (Pa.Super. 2017) (internal citations and quotation marks omitted).

Generally speaking, the Pennsylvania Sentencing Code permits a trial court to impose "[a] fine" as one of several "alternatives" available "[i]n determining the sentence to be imposed." 42 Pa.C.S. §§ 9721(a)(5), 9726(a)-(b). However, the Sentencing Code also provides that "[t]he court shall **not** sentence a defendant to pay a fine unless it appears of record that: (1) **the defendant is or will be able to pay the fine**; and (2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime." 42 Pa.C.S. § 9726(c) (emphasis added).

We note that Appellant did not raise any claim challenging the assignment of fines in the trial court. However, this Court has previously held that "a claim raising the complete absence of evidence of the defendant's ability to pay [a fine] is not subject to waiver for a failure to preserve the issue in the first instance." *Commonwealth v. Boyd*, 73 A.3d 1269, 1274 (Pa.Super. 2013) (*en banc*); *see also*, *e.g.*, *Commonwealth v. Ford*, 217 A.3d 824, 827 (Pa. 2019) (noting that a claim that a trial court imposed a non-mandatory fine without conducting an ability-to-pay determination "constitutes a nonwaiv[e]able challenge to the legality of the sentence"). Therefore, Appellant's allegation that the trial court failed to consider his ability to pay before imposing non-mandatory fines implicates the legality of his sentence and is not subject to waiver. *Id*.

Appellant's argument is straightforward and persuasively relies upon the Supreme Court's holding in *Ford* and a litany of additional decisions from this Court. *See* Appellant's brief at 36-37 ("The law is clear [that] the Court must consider a defendant's ability to pay fines prior to their imposition. . . . [T]he sentencing order should be vacated and the matter remanded for sentencing."). There is no colorable indication in the certified record that the trial court ever conducted an inquiry into Appellant's ability to pay these fines.

We find *Ford* to be instructive in these matters. In that case, Ford asserted, *inter alia*, that his sentence was illegal due to the trial court's failure to determine his ability to pay before imposing a number of non-mandatory fines. *Ford*, *supra* at 828. The Commonwealth responded that Ford had agreed to pay these non-mandatory fines as part of a negotiated guilty plea and, thereby, obviated the need for such a determination. *Id*. at 829. Ultimately, our Supreme Court held that "[t]he mere fact that a person agrees, as part of a *quid pro quo* arrangement, to pay a specific sum does not necessarily mean that he or she can (or even will be able to) make good on that promise." *Id*. Thus, the High Court concluded that the trial court had erred in failing to conduct an ability-to-pay determination. *Id*.

While quibbling with various aspects of Appellant's argument, the Commonwealth concedes the key aspect of the holding from *Ford*. *See* Commonwealth's brief at 24 ("*Ford* simply holds that ability to pay must be determined . . . before a court can impose non-mandatory fines."). Likewise,

we believe that the import of this holding is quite clear: "[T]rial courts are without authority to impose non-mandatory fines absent record evidence that the defendant is or will be able to pay them." *Ford*, *supra* at 829.

Thus, we believe that Appellant is entitled to relief under *Ford* and § 9726(c)(1). The trial court erred by failing to conduct an inquiry into Appellant's ability to pay prior to imposing these non-mandatory fines. Accordingly, we vacate that portion of Appellant's sentence requiring him to pay fines and remand for resentencing in conformity with this opinion.

Turning to that portion of Appellant's claim concerning the trial court's imposition of mandatory costs without inquiring into his ability to pay, we note that recent jurisprudence confirms that this issue also implicates the legality of Appellant's sentence.[13] *See Commonwealth v. Lehman*, 201 A.3d 1279,

_____

[13] As this Court noted in *Commonwealth v. Gary-Ravenell*, 241 A.3d 460 (Pa.Super. 2020) (*en banc*) (non-precedential decision at 9), there is a nascent conflict in this Court's case law regarding "whether a trial court's authority to impose costs implicates the legality of sentence." Despite the above-cited holdings in *Commonwealth v. Lehman*, 201 A.3d 1279, 1283 (Pa.Super. 2019) ("*Lehman I*") and *Commonwealth v. Garzone*, 993 A.2d 306, 316 (Pa.Super. 2010), a different panel of this Court recently concluded that "a direction to pay costs in a criminal proceeding is not a part of the sentence, but is an incident of judgment." *Commonwealth v. Mulkin*, 228 A.3d 913, 919 (Pa.Super. 2020). As we recognized in *Gary-Ravenell*, these lines of precedent are in apparent conflict with one another.

However, in December 2020, our Supreme Court explicitly affirmed the holding in *Lehman I*. *See Commonwealth v. Lehman*, 243 A.3d 7, 8 (Pa. 2020) ("*Lehman II*"). Moreover, the Supreme Court clarified that the imposition of mandatory costs of prosecution is governed by 16 P.S. § 1403. *Id*. at 9 n.3. This statute includes language indicating that defendants are

1283 (Pa.Super. 2019), *affirmed*, 243 A.3d 7 (Pa. 2020) ("Because [the defendant] challenges the trial court's authority to impose costs . . . , we conclude that the [defendant's] claim implicates the legality of his sentence[.]"); **Commonwealth v. Garzone**, 993 A.2d 306, 316 (Pa.Super. 2010) (same). As such, we will address the merits of this claim despite the fact that Appellant did not raise it before the trial court.

Appellant's specific arguments arise under Pennsylvania Rule of Criminal Procedure 706(C), which provides that "[t]he court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations." Pa.R.Crim.P. 706(C). Relying upon this provision, Appellant asserts that the imposition of costs without consideration of his ability to pay was improper. **See** Appellant's brief at 37. We disagree.

Although artfully presented, Appellant's substantive arguments run counter to existing precedent, which has consistently interpreted Rule 706 as **not** requiring a presentence inquiry into a defendant's ability to pay costs. **See Ford**, **supra** at 827 n.6 (citing Pa.R.Crim.P. 706) ("[A] **presentence**

---

"sentenced" to pay the costs of prosecution, which undermines the holding in **Mulkin** suggesting that costs are not a part of a sentence. **See Gary-Ravenell**, **supra** at 9. Given the affirmance of **Lehman I** and the phrasing of § 1403, we must apply the line of precedent holding that challenges to the sentencing court's authority to impose costs sounds in legality of sentence.

ability-to-pay hearing is not required when costs alone are imposed." (emphasis in original)); *see also Commonwealth v. Childs*, 63 A.3d 323, 326 (Pa.Super. 2013) ("Generally, a defendant is not entitled to a pre-sentencing hearing on his or her ability to pay costs.").

Most recently, in *Commonwealth v. Lopez*, ___ A.3d ___, 2021 WL 1096376, at *1 (Pa.Super. 2021) (*en banc*), this Court explicitly reaffirmed this interpretation of Pennsylvania law: "[W]hile a trial court has the discretion to hold an ability-to-pay hearing at sentencing, Rule 706(C) only requires the court to hold such a hearing when a defendant faces incarceration for failure to pay court costs previously imposed on him."    Accordingly, we conclude that Rule 706 does not require a presentence determination of Appellant's ability to pay before the trial court imposes costs.  *See Lopez*, *supra* at *1-*10.  No relief is due.[14]

To summarize the foregoing discussion, we affirm Appellant's underlying convictions for the above-stated offenses.  Based upon the trial court's failure

---

[14] Specifically, Appellant relies upon this Court's holding in *Commonwealth v. Martin*, 335 A.2d 424 (Pa.Super. 1975) (*en banc*), wherein this Court found that a trial court erred in failing to conduct an ability-to-pay determination before imposing a substantial **fine** as part of a defendant's sentence.  *Id*. at 425-26.  Appellant argues this holding should also apply as to **costs**.

This proffered interpretation of Pennsylvania law was explicitly rejected in *Commonwealth v. Lopez*, ___ A.3d ___, 2021 WL 1096376 (Pa.Super. 2021) (*en banc*), wherein this Court found that "a defendant is not entitled to an ability-to-pay hearing before a court imposes costs at sentencing."  *Id*. at *10 (citing *Martin*, *supra* at 425-26).  Pursuant to *Lopez*, the legal distinctions between fines and costs under Pennsylvania law persist.

to conduct a presentence ability-to-pay determination, we vacate that portion of Appellant's judgment of sentence requiring him to pay $500 in fines and remand for resentencing in conformity with § 9726. In all other aspects, we affirm Appellant's judgment of sentence.

Convictions affirmed. Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/21