J-A22045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:              PENNSYLVANIA
Appellant :
:
v. :
:
JOSEPH SCOTT RANKINEN :
:
Appellant :         No. 403 MDA 2021

Appeal from the PCRA Order Entered March 5, 2021
In the Court of Common Pleas of Clinton County
Criminal Division at No(s): CP-18-CR-0000429-2016

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: DECEMBER 7, 2021**

Appellant, Joseph Scott Rankinen, appeals from the order entered in the Clinton County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The relevant facts and procedural history of this appeal are as follows. In May 2011, Appellant raped and sexually assaulted Victim during a 4-H program at the Clinton County Fairgrounds. At the time, Appellant was sixteen (16) years old, and Victim was twelve (12) years old. Victim did not report the crimes until 2015, when she realized the gravity of Appellant's actions.

Following trial, a jury convicted Appellant of rape, rape of a child, involuntary deviate sexual intercourse ("IDSI"), indecent assault, and terroristic threats. On September 18, 2017, the court sentenced Appellant to

an aggregate fifteen (15) to thirty (30) years' imprisonment. This Court affirmed the judgment of sentence on May 31, 2019, and our Supreme Court denied allowance of appeal on February 19, 2020.

On June 8, 2020, Appellant timely filed a counseled PCRA petition, raising various claims of trial counsel's ineffectiveness. The court conducted an evidentiary hearing on October 13, 2020. Appellant's trial counsel was the only witness presented at the hearing. After supplemental briefing, the court denied PCRA relief on March 5, 2021.

Appellant timely filed a notice of appeal on March 25, 2021. That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on April 12, 2021.

Appellant now raises the following issues for our review:

> Whether the court erred in denying Appellant's argument of [ineffective] assistance of counsel where counsel failed to object at trial to the testimony by Trooper Sweet to Appellant's post-arrest and post-**Miranda**[1] silence?

> Whether the court erred in denying Appellant's argument of [ineffective] assistance of counsel where counsel failed to request a jury instruction on the lack of prompt complaint for the eleven (11) month time period of May of 2014 to April of 2015?

> Whether the court erred in denying Appellant's argument of [ineffective] assistance of counsel where counsel failed to move pretrial to dismiss the charge of [IDSI]?

---

[1] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

(Appellant's Brief at 3).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." ***Commonwealth v. Beatty***, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 218 A.3d 850 (2019). This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. ***Commonwealth v. Howard***, 249 A.3d 1229 (Pa.Super. 2021). "[W]e review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021).

In his first issue, Appellant contends that the Commonwealth presented trial testimony from Corporal Matthew Sweet, the state police officer who questioned Appellant following his arrest. Appellant asserts that: 1) the prosecutor asked Corporal Sweet about Appellant's post-arrest statements; 2) Corporal Sweet testified that he questioned Appellant about his attitudes towards sex and sexuality; and 3) when Corporal Sweet asked Appellant about whether he thought that sexual abuse was normal, Appellant did not respond. Appellant notes that trial counsel failed to object to this testimony, and the prosecutor subsequently exploited the testimony by referencing Appellant's post-arrest silence during closing arguments.

Appellant argues that Corporal Sweet's testimony violated his Fifth Amendment privilege against self-incrimination. Appellant maintains that trial

counsel had no reasonable basis for failing to object to Corporal Sweet's testimony, and trial counsel misapprehended the relevant law regarding post-arrest silence. Appellant also complains that he suffered prejudice due to trial counsel's inaction, where "[c]ounsel's error was compounded by the fact that the District Attorney later used that specific prejudicial evidence against Appellant in his closing arguments to the jury." (Appellant's Brief at 17). Appellant concludes that trial counsel was ineffective for failing to object to Corporal Sweet's testimony regarding Appellant's post-arrest silence. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612

- 4 -

Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

- 5 -

of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

"It is axiomatic that a defendant enjoys a Constitutional right to remain silent and that it is a violation of that right where reference is made to the accused's post-arrest silence." *Commonwealth v. Messersmith*, 860 A.2d 1078, 1093 (Pa.Super. 2004), *appeal denied*, 583 Pa. 688, 878 A.2d 863 (2005).

> To protect an individual's Fifth Amendment privilege against self-incrimination, the United States Supreme Court has held that, before an individual in police custody may be interrogated, he must first be informed, in clear and unequivocal terms, that he has the right to remain silent, that anything he says can and will be used against him in court, and that he has the right to consult with counsel and to have counsel present during interrogation, and, if he is indigent, counsel will be appointed for him. If an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease, and any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.

*Commonwealth v. Frein*, 651 Pa. 635, 661-62, 206 A.3d 1049, 1064 (2019), *cert. denied*, ___ U.S. ___, 140 S.Ct. 844, ___ L.Ed.2d ___ (2020)

(internal citations, footnote, and quotation marks omitted).

"It is the Commonwealth's burden to establish whether [a defendant] knowingly and voluntarily waived his *Miranda* rights. In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused manifested an understanding of these warnings." *Commonwealth v. Baez*, 21 A.3d 1280, 1283 (Pa.Super. 2011), *appeal denied*, 614 Pa. 699, 37 A.3d 1193 (2012) (quoting *Commonwealth v. Eichinger*, 591 Pa. 1, 24, 915 A.2d 1122, 1135-36 (2007)). "If the totality of the circumstances reveals an uncoerced choice and the requisite level of comprehension, a court may properly find that *Miranda* rights have been waived." *Commonwealth v. Lukach*, 163 A.3d 1003, 1011 (Pa.Super. 2017), *affirmed*, 649 Pa. 26, 195 A.3d 176 (2018).

"[I]n *Berghuis v. Thompkins*, 560 U.S. 370, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010), the high Court held that an individual in police custody subject to interrogation must affirmatively invoke his or her *Miranda* rights; thus, mere silence in the face of police questioning after being given *Miranda* warnings is insufficient to invoke *Miranda* rights." *Commonwealth v. Briggs*, 608 Pa. 430, 475 n.27, 12 A.3d 291, 318 n.27 (2011), *cert. denied*, 565 U.S. 889, 132 S.Ct. 267, 181 L.Ed.2d 157 (2011). "If an accused makes a statement concerning [his or her *Miranda* rights] 'that is ambiguous or equivocal' **or makes no statement**, the police are not required to end the interrogation … or ask questions to clarify whether the accused wants to

invoke his or her ***Miranda*** rights…." ***Berghuis, supra*** at 381, 130 S.Ct. at 2259-60, 176 L.Ed.2d at ___ (internal citations omitted) (emphasis added).

Instantly, Corporal Sweet testified that he executed an arrest warrant and took Appellant into custody on April 6, 2016. (***See*** N.T. Trial, 6/22/17, at 197). Prior to conducting an interview, Corporal Sweet advised Appellant of his ***Miranda*** rights. (***Id.*** at 198). At the time, Appellant and Corporal Sweet were seated in the back of an unmarked state police vehicle. (***Id.***) Another trooper drove the vehicle. (***Id.***) Appellant "indicated that he understood his ***Miranda*** warnings and that he agreed to talk to us at that point." (***Id.*** at 198-99).

During the interview, Corporal Sweet informed Appellant about the nature of Victim's allegations. (***Id.*** at 200). Appellant denied sexually assaulting Victim. (***Id.*** at 201). After Appellant's denial, Corporal Sweet changed tactics and attempted "to deflect some of the blame on maybe the way he was growing up or brought up or something that had happened in [Appellant's] past." (***Id.*** at 202-03). Appellant subsequently indicated that he had been sexually assaulted by "an older neighbor boy" in the past. (***Id.*** at 205). Corporal Sweet then asked Appellant about his sexuality:

> I got into him with his sexuality, whether he was a virgin, stuff like that, trying to get, again, conversation to keep him talking to possibly get some sort of admission. He indicated that he lost his virginity sometime after the 2011 incident, and I guess at that point I asked him, you know, do you feel that sexual abuse is normal, you know, the loss of your virginity. To that he gave no answer. He remained silent.

(*Id.* at 206).

Despite Appellant's silence in response to this one specific inquiry, the interview continued. Appellant acknowledged that he knew Victim, but their interactions were limited to the 4-H program. (*Id.* at 207). During the remainder of the interview, Corporal Sweet characterized Appellant's behavior as "happy go lucky, jovial at times." (*Id.* at 208). Corporal Sweet also indicated that Appellant "was cracking jokes pretty much the entire ride … making light of a lot of things that were going on." (*Id.*)

Although trial counsel did not object to Corporal Sweet's reference to Appellant's silence, the PCRA court emphasized that Appellant did not actually invoke his right to remain silent:

> In the present matter, [Appellant] took absolutely no affirmative action to invoke his right to remain silent. [Appellant] continued to answer [Corporal] Sweet's questions following his waiver of his *Miranda* Rights for the vast majority of the interview, with the exception of the one question at issue. These actions are not clear and [un]ambiguous as they need to be for the invocation of his right to remain silent.

(PCRA Court Opinion, filed March 5, 2021, at 8) (unnumbered).

Our review of the record confirms the PCRA court's conclusion. *See Prater, supra*; *Beatty, supra*. Appellant's silence in response to one question after being given *Miranda* warnings was insufficient to invoke *Miranda* rights. *See Briggs, supra*. *See also Berghuis, supra* (holding defendant did not unambiguously invoke right to remain silent; fact that defendant was silent during first two hours and forty-five minutes of three-

hour interrogation was insufficient to invoke right to remain silent under *Miranda*, where defendant never stated that he wanted to remain silent or that he did not want to talk with police). Because the Commonwealth did not violate Appellant's rights by eliciting testimony regarding this limited instance of silence, there is no arguable merit to Appellant's first ineffectiveness claim. *See Frein, supra*; *Smith, supra*. Consequently, no relief is due.

In his second issue, Appellant admits that trial counsel requested a generic "prompt complaint" jury instruction. Appellant contends, however, that Victim saw Appellant in May 2014. Although Victim "testified that everything came rushing back to her at that time," Appellant emphasizes that Victim "still did not report the [crimes] until eleven (11) months later … when she told her mother." (Appellant's Brief at 20). Appellant insists that trial counsel should have made a specific request for a prompt complaint instruction for the period from May 2014 through when the complaint was made in 2015.

Because the Commonwealth's case revolved around Victim's testimony, Appellant maintains that Victim's credibility was critical, and "the issue of the lack of a prompt complaint was significant." (*Id.* at 23). Appellant further argues that trial counsel had no reasonable strategic basis for failing to raise the issue of prompt complaint "as framed here," and the court's failure to provide such a jury instruction caused Appellant to suffer prejudice. (*Id.*) Appellant concludes that trial counsel was ineffective on this basis. We

disagree.

"It is well-settled that 'the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.'" *Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa.Super. 2013) (quoting *Commonwealth v. Brown*, 911 A.2d 576, 583 (Pa.Super. 2006)).

> [T]his Court has explained that [t]he prompt complaint instruction is based upon a belief that a victim of a violent assault would reveal the assault occurred at the first available opportunity.
>
> However, [t]he propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For example, where the victim of a sexual assault is a minor who may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication. This is especially true where the perpetrator is one with authority or custodial control over the victim.

*Commonwealth v. Snyder*, 251 A.3d 782, 790 (Pa.Super. 2021) (internal citations and quotation marks omitted).

Instantly, trial counsel requested Pennsylvania Suggested Standard Criminal Jury Instruction 4.13(A), regarding a victim's failure to make a prompt complaint. (*See* N.T. Trial, 6/23/17, at 8-9). At that time, trial counsel did not specify that the instruction should be for the period from May 2014 through when the complaint was made in 2015. In denying trial counsel's request, the court correctly noted that the lack of a prompt

complaint does not necessarily justify an inference of fabrication where the victim is a minor who "may not have appreciated the offensive nature of the conduct." (*Id.* at 10).

Regardless of whether trial counsel limited her request for a prompt complaint instruction to the period from May 2014 through when the complaint was made, our review of the record confirms that Victim did not appreciate the offensive nature of Appellant's conduct until she first informed her mother about the underlying incident in 2015. At trial, Victim testified that she was a virgin, and she did not know what sex was at the time of the assault. (*See* N.T. Trial, 6/22/17, at 58). Victim also testified about the circumstances of the 2015 revelation to her mother: "I told her that he raped me because I knew what that term meant at that time." (*Id.* at 86). Victim further explained that she did not share information about the assault sooner because she "was embarrassed, scared," and she had been working with a therapist for "about a year" to overcome these issues. (*Id.* at 87).

Because Victim did not appreciate the offensive nature of Appellant's conduct for a period after the assault, any prompt complaint instruction was unwarranted. *See Snyder, supra*. Under these circumstances, there is no arguable merit to Appellant's ineffectiveness claim. *See Smith, supra*.

Therefore, Appellant is not entitled to relief on his second issue.[2]

In his third issue, Appellant asserts that the Commonwealth's pretrial discovery did not contain information to support the IDSI charge. "Despite this fact, [trial] counsel failed to move pretrial to dismiss the charge of [IDSI]." (Appellant's Brief at 23). Appellant insists that the court would have had no choice but to grant a motion to dismiss the IDSI charge, where the Commonwealth failed to support the offense "even at a *prima facie* level." (*Id.*) Appellant contends that trial counsel did not have a reasonable strategic basis for failing to move for dismissal of the charge prior to trial. Appellant also argues that he suffered prejudice due to trial counsel's inaction. Specifically, Appellant notes that Victim "testified [at trial] that Appellant forced her to the ground and made her perform oral sex on him," and this was the first time that there was any mention of behavior that satisfied the elements of IDSI. (*Id.* at 24). Based upon the foregoing, Appellant concludes that trial counsel was ineffective for failing to move for dismissal of the IDSI

---

[2] The PCRA court characterized this issue as previously litigated on direct appeal. We disagree with this conclusion. Specifically, Appellant's direct appeal argument was that the trial court erred in denying the requested prompt complaint instruction. *See Commonwealth v. Rankinen*, 217 A.3d 449 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 225 A.3d 1099 (2020) (unpublished memorandum). The current PCRA issue based upon counsel's purported ineffectiveness "raises a claim distinct from the underlying allegations of trial court error, given its basis in Sixth Amendment principles." *Commonwealth v. Gibson*, 597 Pa. 402, 445, 951 A.2d 1110, 1136 (2008). This Court, however, is not bound by the rationale of the PCRA court and may affirm on any basis. *See In re Jacobs*, 15 A.3d 509 (Pa.Super. 2011).

charge prior to trial. We disagree.

"The purpose of a preliminary hearing is to determine whether the Commonwealth has made out a *prima facie* case for the offenses charged." ***Commonwealth v. Bostian***, 232 A.3d 898, 908 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 244 A.3d 3 (2021). "A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime." ***Id.*** (quoting ***Commonwealth v. Black***, 108 A.3d 70, 77 (Pa.Super. 2015)). "A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa.Super. 2016) (*en banc*).

Further, the Crimes Code defines IDSI of a child as follows:

### § 3123.  Involuntary deviate sexual intercourse

\*   \*   \*

**(b) Involuntary deviate sexual intercourse with a child.—**A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S.A. § 3123(b). "[I]n order to sustain a conviction for [IDSI], the Commonwealth must establish the perpetrator engaged in acts of oral or anal intercourse, which involved penetration however slight." ***Commonwealth v. L.N.***, 787 A.2d 1064, 1070 (Pa.Super. 2001), *appeal denied*, 569 Pa. 680,

800 A.2d 931 (2002).

Instantly, trial counsel testified at the PCRA hearing and confirmed that the Commonwealth did not provide any information during discovery to support the IDSI charge. (*See* N.T. PCRA Hearing, 10/13/20, at 26). Trial counsel also provided the following explanation for her decision not to make a pretrial motion to dismiss the IDSI charge:

> So my experience has been that there are times that prosecutors aren't truly prepared and so they don't present all of the elements in a case. If I alert the prosecution prior to a trial that there are elements that are missing, they'll just clean it up. So taking that plus the thought that the jury would hear initially in an opening argument that there were multiple charges and then when the instruction was given a charge was gone, I trust that juries pick up on those pieces of information and then start to question the information that's in front of them.

(*Id.* at 27). Trial counsel also testified that she met with Appellant prior to trial, she reviewed the discovery with him, and Appellant was aware of trial counsel's strategy regarding the timing for a motion to dismiss the IDSI charge. (*Id.* at 11-12, 27).

The PCRA court found trial counsel's testimony credible, and it would not "second guess" trial counsel's strategy. (*See* PCRA Court Opinion at 11) (unnumbered). In light of the applicable standard of review, we grant great deference to the court's credibility determination. *See Commonwealth v. Johnson*, 600 Pa. 329, 356, 966 A.2d 523, 539 (2009) (stating, "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts"). We

also decline Appellant's invitation to employ a hindsight analysis in comparing trial counsel's actions with other efforts she could have taken. ***See King, supra***. Consequently, Appellant is not entitled to relief on his third claim, and we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/07/2021