J-A10001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AHMED ELGAAFARY | : | |
| | : | |
| Appellant | : | No. 1178 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 17, 2019
In the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0003891-2018

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.*

MEMORANDUM BY PANELLA, P.J.:                **FILED OCTOBER 12, 2021**

Ahmed Elgaafary appeals from the judgment of sentence entered on December 17, 2019, in the Court of Common Pleas of Chester County, made final by the denial of post-sentence motions by operation of law on April 27, 2020. **See** Pa.R.Crim.P. 720(B)(3)(a). The trial court imposed a sentence of seven to twenty years' incarceration, after a jury convicted Elgaafary of, *inter alia*, rape of an unconscious person.[1] Based on his conviction, Elgaafary was also directed to register for lifetime reporting under the revised Subchapter H of the Pennsylvania Sex Offender Registration and Notification Act ("SORNA II"). **See** 42 Pa.C.S.A. §§ 9799.10-9799.41. Elgaafary now challenges the

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3121(a)(3).

discretionary aspects of his sentence and claims that the requirements under SORNA II violated his constitutional due process rights. Based on the following, we vacate the order denying Elgaafary's post-sentence motion and remand for further proceedings in accordance with the Pennsylvania Supreme Court's recent holding in **Commonwealth v. Torsilieri**, 232 A.3d 567 (Pa. 2020). In all other respects, we affirm the judgment of sentence.

On the late night of February 9, 2018, and early the next day, the 21-year-old victim was at a casino with her mother, stepfather, and a family friend, John Mudrick. While there, she imbibed approximately six alcoholic drinks and appeared to be visibly intoxicated. Her parents left around midnight. Around 2 a.m., another individual, Jessica Hernandez, who was friends with Mudrick, saw that the victim was intoxicated and decided that an Uber[2] service would provide the victim with a safe ride home.[3] Hernandez had originally ordered the Uber ride for herself but based on the state of the victim, she decided to walk the victim out of the casino and placed her in the backseat of the vehicle. She then asked the driver, who was subsequently determined to be Elgaafary, if he would let her change the route destination for the ride. Elgaafary agreed with the request.

_____

[2] Uber is a rideshare business that is similar to a taxi company in that both provide transportation for individuals. **See** https://www.uber.com/us/en/about/, last accessed 9/17/2021.

[3] Hernandez did not personally know the victim but knew that she was connected to Mudrick.

Hernandez tried to ask the victim for her address since she had no personal connection to the female, but the victim was unresponsive and not able to provide any information. Hernandez then found the victim's driver's license in her purse. Hernandez put that address in her Uber account on her phone so that Elgaafary could drive the victim to her home. Elgaafary then drove off.

During the ride, Elgaafary stopped the car twice. Once, so that the victim could exit the vehicle and throw up by the side of the road. The second time, Elgaafary made a stop around the corner from where the victim lived and raped her. Moments after he finished, the victim threw up again. Elgaafary was apparently so angered by her sickness that he took pictures of the victim lying in her own vomit while she was passed out so that he could be compensated for the damage to his car. Elgaafary thereafter drove the victim to her home.

The next morning, the victim woke up in her bedroom with a scared and panicked feeling. The victim indicated the last memory she had from the night was checking her purse to make sure she had everything before she left a casino bar. She did not remember taking the Uber ride home. She felt sore and noticed there were bruises on her thighs as well as dirt under her fingernails. She could not locate her cell phone. When she spoke with her mother and stepfather, she told them she had a "really bad gut feeling" about

what had happened the night before but could not recall anything. N.T., 8/13/2019, at 22.

The victim's mother told her that she had taken an Uber home and they then contacted Mudrick to see if he could give them any information. He sent a screen shot of the Uber trip which revealed that the ride back to the victim's house, which normally would have taken 15 to 20 minutes, took approximately 58 minutes.

During the ride, Elgaafary stopped the car twice. Once, so that the victim could exit the vehicle and throw up by the side of the road. The second time, Elgaafary made a stop around the corner from where the victim lived. There, the victim threw up again. Elgaafary was apparently so angered by her sickness that he took pictures of the victim lying in her own vomit while she was passed out so that he could be compensated for the damage to his car. Elgaafary thereafter drove the victim to her home. The cost of the trip also included a $150.00 cleaning fee. The victim went to the hospital later that day and tested for evidence that she had been raped.

State Trooper Amus Glick was the investigating officer assigned to the case. He spoke with both the victim and Elgaafary, who is a citizen of Egypt.[4] When Trooper Glick first spoke with Elgaafary on February 23, 2018, it was

---

[4] Elgaafary came to the United States from Egypt in 2010. He is not an American citizen but is a permanent resident green card holder. He was married to an American citizen, had a ten-year-old stepdaughter, and his wife was pregnant with their own child at the time of the incident.

- 4 -

before the test results from the rape kit had come out. Trooper Glick noted Elgaafary was mostly concerned about the status of his Uber account because the company had suspended him as a driver. Elgaafary denied that he had any sexual contact with the victim and answered in the negative when asked if she made any advances towards him. The trooper also asked Elgaafary for a DNA sample, to which Elgaafary voluntarily consented.

After the rape kit confirmed that Elgaafary's DNA was present, Trooper Glick spoke with Elgaafary again. This time, he admitted that he had sex with the victim, but alleged that it was consensual, and that she was making advances towards him. Elgaafary was subsequently arrested and charged with multiple crimes related to the incident.

A four-day jury trial began on August 12, 2019. In addition to many other witnesses, the victim and Elgaafary both took the stand and testified about the incident. After hearing the testimony, the jury convicted Elgaafary of one count of rape of an unconscious person, one count of sexual assault, and two counts of indecent assault. On December 17, 2019, the court sentenced him to a term of seven to twenty years' imprisonment for the rape offense. The remaining convictions merged for sentencing purposes. Elgaafary was subsequently determined not to be a sexually violent predator ("SVP") but was directed to register for life as a Tier III offender under SORNA based

on his conviction.[5] He filed timely post-sentence motions, which were denied by operation of law. This appeal followed.

Elgaafary's first issue is a challenge to the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentencing do not guarantee a petitioner's right to our review. **See Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Swope**, 123 A.3d 333, 337 (Pa. Super. 2015) (citation omitted).

Here, Elgaafary filed a timely notice of appeal, and his brief included a statement of reasons relied upon for allowance of appeal, as is required by Pa.R.A.P. 2119(f). **See** Appellant's Brief, at 21-25. He also preserved the issue in a post-sentence motion. **See** Defendant's Post-Sentence Motions Filed

---

[5] At the sentencing hearing, Elgaafary's sexually violent predator assessment had not been completed. Nevertheless, the Commonwealth provided Elgaafary and his counsel with the colloquy concerning his SORNA's requirements, which included "a waiver of the SVP hearing for purposes of sentencing." N.T., 12/17/2019, at 2-3; **see also** Registration Notification Requirements Pursuant to 42 Pa.C.S.A. § 9799.10 *et seq.*, 12/17/2019.

Pursuant to Pa.R.Crim.P. 720, 12/27/2019, at ¶ 7. Therefore, we must determine whether Elgaafary has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citation omitted). "[A]n allegation that the sentencing court failed to consider mitigating factors generally does not raise a substantial question for our review." ***Commonwealth v. Rhoades***, 8 A.3d 912, 918-919 (Pa. Super. 2010) (citation omitted). Nevertheless, an "excessive sentence claim[ ] in conjunction with an assertion that the court did not consider mitigating factors[,]" does present a substantial question for our review. ***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted). Moreover, an allegation that the sentence was unreasonable because it was outside the sentencing guidelines raises a substantial question. ***See Commonwealth v. Lawrence***, 960 A.2d 473, 478 (Pa. Super. 2008).

Here, Elgaafary identifies four reasons why he believes he has raised a substantial question. First, he contends the trial court abused its discretion by imposing a manifestly excessive and unreasonable sentence given the absence of any aggravating factors not already accounted for by the

Sentencing Guidelines. Next, he argues the court erred by imposing a sentence that was above the aggravated range of the Sentencing Guidelines. Third, he asserts that the court failed to consider the mitigating evidence including Elgaafary's history and personal characteristics, and finally, he claims the court failed to consider that he was unlikely to cause harm to the community in the future. *See* Appellant's Brief, at 23-25. Taken as a whole, we conclude Elgaafary has raised a substantial question, and we proceed to examine the merits of his sentencing challenge.

We have a deferential standard of review for discretionary aspects of the sentence claims:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

In his first challenge, Elgaafary argues the court misconstrued certain mitigating evidence as aggravating evidence and disregarded his rehabilitative needs. *See* Appellant's Brief, at 28-29. For example, he points out that at sentencing, the court made a comment that Elgaafary's lack of remorse was of great concern and considered it to be an aggravating factor. *See id.*, at 29. However, Elgaafary states that in doing so, the court ignored the fact that he apologized to the victim at the sentencing hearing and that several character

letters from individuals within the community that confirmed Elgaafary felt remorse for his conduct. Moreover, Elgaafary contends the court failed to consider that he will never be in the position as an Uber driver to harm the community and he will be deported to Egypt once he serves his sentence. ***See id.*** Furthermore, Elgaafary asserts the court improperly contemplated the fact that Elgaafary had his ten-year-old stepdaughter write a letter to the court asking that it not put him jail for a significant time. ***Id.***, at 30. Elgaafary concludes that because he has no prior criminal history and will be taken away from his wife and children as a result of deportation, the "increased duration of his incarceration, well above the aggravated range, is not proportionate to the aims" of the Sentencing Code. ***Id.***, at 30.

While the court is required to consider the ranges set forth in the sentencing guidelines, it is not bound by them. ***See Commonwealth v. Yuhasz***, 923 A.2d 1111, 1118 (Pa. 2007). The court may depart from the "guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community[.]" ***Commonwealth v. Eby***, 784 A.2d 204, 206 (Pa. Super. 2001) (citation omitted); ***see also*** 42 Pa.C.S.A. § 9721(b).

If the court imposes a sentence outside the guideline ranges, it must place adequate reasons for the deviation in the record. ***See Commonwealth v. P.L.S.***, 894 A.2d 120, 129-130 (Pa. Super. 2006). Nevertheless, we only

vacate an outside-the-guidelines sentence if the "sentence is unreasonable[.]"

42 Pa.C.S.A. § 9781(c)(3).

> In making this "unreasonableness" inquiry, we consider:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Here, the court had the benefit of a presentence investigation report ("PSI") and 18 letters written by Elgaafary's family and friends. **See** N.T., 12/17/2019, at 39. The court also heard the victim's impact statement, two defense character witnesses, and argument from both parties. **See id.**, at 2-39. Elgaafary also testified during allocution in which he apologized to the victim, stating: "Your Honor, ... I want to apologize to the young lady ... and just say that I'm very sorry." **Id.**, at 38-39.

The Commonwealth indicated it was requesting an eight-to-sixteen-year sentence be imposed, eighteen months above the aggravated range. **See id.**, at 9-10. It set forth five factors for requesting the above-the-aggravated-range sentence: (1) the gravity of the offense and the seriousness of the convictions; (2) the abuse of the position of trust; (3) Elgaafary's lies and

manipulation; (4) Elgaafary's failure to express remorse; and (5) the impact on the victim. *Id.*, at 10-14.

The statutory maximum for the rape offense is 20 years. *See* 18 Pa.C.S.A. § 3121(a)(3); 18 Pa.C.S.A. § 1103(1). Elgaafary had a prior record score of zero. *See* N.T., 12/17/2019, at 9. The offense gravity score for the rape offense was a 12. *See id.* The Pennsylvania Sentencing Guidelines provide a standard sentencing range of 48-66 months, with an aggravated range of an additional 12 months for the conviction. *See id.* As noted above, the court imposed a sentence of seven to twenty years, or 84 to 240 months. Accordingly, the court imposed a sentence that exceeded the aggravated range.

The court justified the sentence by explaining numerous reasons it considered. *Id.*, at 40-47. These reasons included a focus on the indignities perpetrated upon the victim, the bold nature of the offense, and the lack of remorse shown by Elgaafary. *See id.*, at 40. The court noted that Hernandez had entrusted Elgaafary with driving the victim home safely because she was so intoxicated. *See id.*, at 41. However, as the court explained, it was the defense's argument at trial that the victim was not drunk even though there was clear evidence to rebut that assertion, including Elgaafary's own statement that he had to stop the car so the victim could get out and throw up on the side of the road. *See id.*, at 41-42.

The court also pointed out that when Elgaafary stopped the car the second time to take advantage of the victim and rape her, it occurred in an isolated neighborhood. *See id.*, at 42. The court found the location demonstrated that Elgaafary committed "a crime of opportunity" that was intended "by design." *Id.*, at 42. Furthermore, the court stated that Elgaafary took pictures after he raped her when the victim got sick because it "angered" him. *Id.* Moreover, the court noted these were not pictures of a consenting adult as he portrayed the victim in his trial defense, but rather "a girl laying in her own vomit passed out in a car within moments of being raped." *Id.*, at 42-43. The court also expressed that it was "shocking" that Elgaafary was "more concerned with the financial damage to [his] car than the fate of this young lady." *Id.*, at 42.

The court highlighted that Elgaafary originally lied to the police during the first interview by saying that he never had sex with the victim, and then made "absurd" statements at trial that the victim did not appear to be drunk and that she had seduced him into having sex. *Id.*, at 44. The court stated, "And that showed very little remorse for the victim at that time. Or any time." *Id.*

The court acknowledged that up until the night of the incident, Elgaafary was a "good man" with children and a wife. *Id.* Nevertheless, the court commented on receiving a letter from Elgaafary's stepdaughter:

> I don't ever want to read another letter from a ten-year-old telling
> me don't put daddy in jail for a lot of years again, because that

made me sick to my stomach that she would be put in the position of writing a letter like that. You have family who loves you, you have friends, other people who swear by you. And I don't doubt any of that.

*Id.* Likewise, in addressing the rehabilitative needs factors, the court stated Elgaafary's lack of remorse "greatly" concerned it. *Id.*, at 45.

The court further found that Elgaafary's impending deportation was not a mitigating factor. *See id.*, at 45. Additionally, the court determined the gravity of the offense on the victim, effect on the community, and the protection of the public were also significant factors. The court emphasized the fact that when a customer hires an Uber driver to take them some place, they put their faith in that driver not to abuse the situation and here, there was a "horrible abuse of the public trust." *Id.*, at 46. The court concluded: "In a moment of opportunity, [Elgaafary] acted as a predator and [he] raped an unconscious, vulnerable 21-year-old woman and lied about it and made her go through the trauma of a trial. And that's egregious." *Id.*, at 47.

Additionally, in its Rule 1925(a) opinion, the trial court relied on its statements at the sentencing hearing and opined:

> The court felt that there were several aggravating factors that mandated this kind of sentence. Specifically, the court considered the effect these crimes had on the victim and on the community, the fact that [Elgaafary] was in a position of trust at the time he committed these offenses, and on [Elgaafary]'s lack of remorse.

Trial Court Opinion, 10/12/2020, at 4.

We conclude Elgaafary's allegations are contradicted by the record. While Elgaafary suggests that the court did not consider certain mitigating

- 13 -

factors, the court had the benefit of the PSI and we can reasonably infer the court considered those factors, including his familial status and that he was well-respected in his community. ***See Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) ("Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed."). Second, while Elgaafary argues that his immigration status and the fact that he will never be employed as an Uber employee should be deemed mitigating factors, he fails to explain why these facts cannot also be considered aggravating factors. Our review of the case law of this Commonwealth yields no such decisions in his favor.

Additionally, we construe the court's comments at the sentencing hearing demonstrate that the court adequately considered the factors listed in Sections 9721(b) and 9781(b) before imposing a sentence above the aggravated range of the guidelines. For example, while Elgaafary may have apologized to the victim at sentencing, it is evident that the court's "lack of remorse" comment concerned his numerous lies to police, his contradictory statements at trial regarding the victim's intoxicated condition, and that he took pictures of the victim in an unconscious state because he was more concerned with the damage to his car than her well-being.

It was within the court's discretion to determine that this evidence demonstrated a "lack of remorse" on the part of Elgaafary that outweighed his apology to the victim at the sentencing hearing. Furthermore, when the court referenced the fact that Elgaafary's young stepdaughter submitted a character letter, the court was discussing Elgaafary's support from the community. It was clear that the court was attempting to advise that Elgaafary does not need to involve his child in his criminal proceeding based on all the other submitted letters that described Elgaafary as a good person. Furthermore, the court's extensive rationale at the sentencing proceeding revealed that there were multiple factors that led to its decision regarding the imposition of an above-the-aggravated range sentence, not just this one instance concerning the stepdaughter's letter.

As such, the record demonstrates that the court considered the applicable Sentencing Guidelines and determined that an upward departure from the guidelines was proper, particularly given the gravity of the offense as it related to the impact on the victim's life and the protection of the community because Elgaafary abused his position of public trust when he sexually assaulted the victim while being paid to drive her home. Those reasons are clearly rational reasons to deviate from the Guidelines. Therefore, Elgaafary has not demonstrated that his sentence was "unreasonable." 42 Pa.C.S.A. § 9781(c)(3). Accordingly, Elgaafary's discretionary sentencing argument fails.

Next, Elgaafary complains that the lifetime registration and notification provisions of SORNA violate his rights under the 14th Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania. *See* Appellant's Brief, at 31. Specifically, Elgaafary states the provisions infringe on his right to reputation without due process and are based on an irrebuttable presumption that all sex offenders pose a high risk of reoffending without any individualized determination that he, in particular, poses a risk of reoffending. *See id.* He relies on the Pennsylvania Supreme Court's recent decision in *Torsilieri*, *supra*, to support his argument that a remand for an evidentiary hearing is necessary to address his constitutional claims. *See* Appellant's Brief, at 32-33.

"[T]he constitutionality of a statute presents a pure question of law. Therefore, our standard of review is *de novo* and scope of review is plenary." *Commonwealth v. Wade*, 33 A.3d 108, 115-16 (Pa. Super. 2011) (citation omitted).

In addressing constitutional challenges to legislative enactments, we are mindful that:

> the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society, but also that any restriction is subject to judicial review to protect the constitutional rights of all citizens. We emphasize that a party challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution.

*Torsilieri*, 232 A.3d at 575 (citations and internal quotation marks omitted).

The ***Torsilieri*** Court addressed the constitutionality of Revised Subchapter H of SORNA, which applies to individuals who commit an offense after December 20, 2012. Since Elgaafary committed his offenses after that date, his registration is premised upon Subchapter H.

In ***Torsilieri***, the defendant challenged his registration requirements under Subchapter H in post-sentence proceedings. The trial court permitted the defendant "to introduce affidavits and supporting documents of three experts concluding that sexual offenders generally have low recidivism rates and questioning the effectiveness of sexual offender registration systems such as SORNA." ***Id.***, at 574. After reviewing this evidence, the court found Subchapter H to be unconstitutional based on a myriad of theories, including that the registration and notification provisions of Subchapter H violated the defendant's "right to due process by impairing his right to reputation, as protected by the Pennsylvania Constitution, through the utilization of an irrebuttable presumption." ***Id.***, at 574-575. The Commonwealth appealed.

As mentioned in ***Torsilieri***, "the test for an unconstitutional irrebuttable presumption requires three factors: (1) the existence of a presumption that impacts an interest protected by the due process clause; (2) a presumption that is not universally true; and (3) the existence of reasonable alternatives to ascertain the presumed fact." ***Id.***, at 586 (citation and quotation marks omitted). There, the Court noted that a "review of the [trial] court's conclusions clearly reveals that the court's analysis of each of the three prongs

of the irrebuttable presumption doctrine relies heavily upon the scientific evidence presented by [the defendant]." *Id.*

As a result, the *Torsilieri* Court vacated the court's order which found Subchapter H to be unconstitutional. The Court declined to reach the constitutional challenge, but rather, held the record needed to be developed further based on following:

> Given the procedures leading to this point, the importance of the underlying issue, and our deference to legislative policy determinations, we decline to render a conclusion on the basis of the record before us. Instead, we conclude that remand is necessary to allow the parties to present additional argument and evidence to address whether a scientific consensus has developed to overturn the legislative determinations in regard to adult sexual offenders' recidivation rates and the effectiveness of a tier-based registration and notification system as they relate to the prongs of the irrebuttable presumption doctrine.

*Id.*, at 587-588 (citation omitted).

The Court further emphasized the following principles:

> [W]e emphasize that all cases are evaluated on the record created in the individual case. Thus, a court need not ignore new scientific evidence merely because a litigant in a prior case provided less convincing evidence. Indeed, this Court will not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights.
>
> Nevertheless, we also emphasize that it will be the rare situation where a court would reevaluate a legislative policy determination, which can only be justified in a case involving the infringement of constitutional rights and a consensus of scientific evidence undermining the legislative determination. We reiterate that while courts are empowered to enforce constitutional rights, they should remain mindful that the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable

only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements.

*Id.*, at 595-596 (citation and quotation marks omitted).

Subsequently, in ***Commonwealth v. Asher***, 244 A.3d 27 (Pa. Super. 2020), a panel of this Court addressed a similar Subchapter H challenge. There, even though the appellant properly preserved the issue at sentencing and in his post-sentence motion, there was no factual record because the trial court did not conduct an evidentiary hearing. The appellant's post-sentence motion was denied by operation of law. The ***Asher*** Court, in accordance with ***Torsilieri***, vacated and remanded the matter "for a hearing at which the parties can present evidence for and against the relevant legislative determinations discussed above." *Id.*, at 33 (citation omitted).[6]

Turning to the present matter, in Elgaafary's post-sentence motion, he sought to modify his sentence based on the argument that SORNA's "internet notification provisions infringe[d] on [his] right to reputation without due process, and SORNA create[d] an irrebuttable presumption that all sex offenders pose a high risk of reoffending." Defendant's Post-Sentence Motions Filed Pursuant to Pa.R.Crim.P. 720, 12/27/2019, at ¶ 8. He did not reference any studies or research to support his position. However, he did attach a proposed order to his post-sentence motion requesting a hearing. The trial

---

[6] ***See also Commonwealth v. Mickley***, 240 A.3d 957, 963 (Pa. Super. 2020).

court refused to entertain his request when the motion was denied by operation of law.

This Court has previously found waiver where an appellant did not raise a **Torsilieri** unconstitutional irrebuttable presumption argument with the trial court but rather, presented the claim for the first time on appeal. **See Commonwealth v. Reslink**, ___ A.3d ___, 2020 PA Super 289, 2020 WL 7415959 (Pa. Super. Dec. 18, 2020) (holding defendant waived his claim that Revised Subchapter H was based on an unconstitutional irrebuttable presumption by failing to raise it at sentencing or in a post-sentence motion).[7] We decline to find waiver based on the circumstances of this case. Elgaafary set forth a colorable constitutional challenge, albeit in general terms, in his post-sentence motion.[8] Moreover, at the time Elgaafary filed his post-sentence motion, **Torsilieri** had not been decided, and the relevant caselaw at the time was in flux. Accordingly, we conclude Elgaafary properly preserved the argument.

Furthermore, because the court did not conduct a hearing, there is no factual record on which we can evaluate Elgaafary's SORNA irrebuttable presumption argument. Therefore, in accordance with **Torsilieri** and **Asher**,

---

[7] **See also Commonwealth v. Snyder**, 251 A.3d 782 (Pa. Super. 2021).

[8] It merits mention that Elgaafary's argument on appeal is sparse in substance and he again did not include any studies or research to support his challenge. **See** Appellant's Brief at 32-33. Nevertheless, he did reference **Torsilieri** in support of his assertion.

we vacate the order denying Elgaafary's post-sentence motion, and remand for an evidentiary hearing.

Judgment of sentence affirmed. Order denying post-sentence motion vacated and case remanded for proceedings consistent with **Torsilieri** and **Asher**. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2021