J-S01001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LESLIE CHARLES SALMOND | : | |
| | : | |
| Appellant | : | No. 609 MDA 2021 |

Appeal from the Judgment of Sentence Entered April 14, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0002063-2019

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                     **FILED MARCH 02, 2022**

Leslie Charles Salmond appeals from the aggregate judgment of sentence of nine and one-half to twenty-five years of incarceration, which was imposed after he pled guilty to possession with intent to deliver ("PWID") and was found guilty by a jury of person not to possess a firearm.

We provide the following background.  In April 2019, police executed a search warrant at Appellant's residence, which he shared with his wife, Eileen Ampey Salmond, and her adult son.  At approximately 6:00 a.m., police knocked and announced their presence.  Receiving no response, police forced entry into the home.  Appellant was first observed standing outside a second-floor bedroom, which was later identified as the bedroom he shared with Mrs. Salmond.  Appellant informed police that he slept on the right side of the bed,

_____

[*] Retired Senior Judge assigned to the Superior Court.

which was the side adjacent to two dressers of different heights, and that he used the taller dresser.

Within that bedroom, police recovered, *inter alia*, one firearm under a pillow on the right side of the bed, one firearm in a holster next to the left side of the bed, two firearms in cases under the bed, and a firearm accessory flashlight and suspected drugs on top of the taller dresser. As a result of the search, Appellant was charged with various drug offenses and, with regard to the firearm recovered from under the pillow, person not to possess a firearm.

As discussed *infra*, some of Appellant's argument hinges on how the sides of the bed are labelled. Upon review of the certified record, it appears that the referenced "right side" of the bed was from the perspective of someone standing at the foot of the bed. **See** N.T. Trial, 4/13-14/21, at 56-58, 67; Exhibits 6-7, 10, 13-15 (depicting the side of the bed adjacent to the dressers). Regardless of what each side was called, the evidence showed that Appellant stated he slept on the side of the bed that Criminal Investigator Brian Errington identified as adjacent to the dressers, which was the same side where the charged firearm was recovered. **Id**.

On April 7, 2021, Appellant pled guilty to PWID in exchange for a sentence of two and one-half to ten years of incarceration and dismissal of the remaining narcotics charges. Sentencing was deferred pending the resolution of his firearms charge. A one-day jury trial commenced on April 13, 2021. At trial, the Commonwealth presented video surveillance of the purchase of the four firearms, as well as testimony from Mrs. Salmond, Investigator Errington,

and Criminal Investigator Andrew Seiler, who performed a search on Appellant's phone, which revealed text messages and photographs of Appellant with other firearms. The jury found Appellant guilty the following day. Immediately after the announcement of the verdict, the trial court sentenced Appellant in accordance with the plea agreement and imposed a consecutive term of incarceration of seven to fifteen years for the firearms conviction. Appellant did not file a post-sentence motion.

This timely filed appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Appellant was denied the due process guaranteed him by state and federal constitutions, because the evidence admitted at trial was insufficient to convict Appellant of the offenses charged.

2. Appellant was denied the due process guaranteed him by both state and federal constitutions because the verdict was against the weight of the evidence admitted at trial[.[1]]

3. The trial court erred and denied Appellant the due process guaranteed him by both state and federal constitutions by denying Appellant's request for the specific jury charge of and on the law of mere presence.

4. The trial court erred and denied Appellant the due process guaranteed him by state and federal constitutions, by refusing

---

[1] Appellant abandons this claim by failing to present any argument in support thereof in his brief. Additionally, Appellant waived this issue by failing to raise it before the trial court in a post-sentence motion, by written motion before sentencing, or orally before sentencing. *See Commonwealth v. Jones*, 191 A.3d 830, 834–35 (Pa.Super. 2018). As Appellant's weight claim has been both abandoned and waived, we do not address it within this memorandum.

- 3 -

to give a curative instruction to the jury when the prosecution altered and enlarged demonstrative photographic evidence and argued in closing, evidence that was not admitted or testified to by any witness.

5. The Commonwealth engaged in prosecutorial misconduct and irreversible trial error occurred, which denied Appellant the due process guaranteed him by both state and federal constitutions, when the prosecution altered and enlarged demonstrative photographic evidence and argued in closing evidence that was not admitted or testified to by any witness.

Appellant's brief at unnumbered 4 (cleaned up).[2]

We first address Appellant's claim that the evidence was insufficient to convict him of person not to possess a firearm because the "evidence failed to show that Appellant constructively possessed a firearm and that he was more

_____

[2] We note that Appellant's statement of the case and argument sections contain no references to the trial transcript, in violation of Pa.R.A.P. 2117 and 2119, respectively. While the trial court cited the transcript in its Rule 1925(a) opinion, it appears to have been an unofficial copy as the transcript was not made part of the certified record and neither Appellant nor the Commonwealth had access to it. In fact, the Commonwealth asks this Court to find Appellant's claims waived for failure to ensure the inclusion of the trial transcript in the certified record. **See** Commonwealth's brief at 10-11. Our review of the certified record reveals that Appellant attempted to order three transcripts. On each form he checked the box for "trial" and listed the dates of the proceedings as "4/7/2021," "4/14/2021," and "4/14/2021." Request for Transcript or Copy, 5/28/21; Request for Transcript or Copy, 5/28/21; Request for Transcript or Copy, 7/6/21. However, only the April 7, 2021 guilty plea and April 14, 2021 sentencing hearings were transcribed and included in the certified record. It appears that Appellant misdated the trial transcript as April 14, 2021 in his request, whereas the trial spanned April 13 and 14, 2021, and immediately preceded the sentencing hearing. We have since remedied this omission by order of court and have received the trial transcript, which includes the sentencing hearing as well. Since we were able to order the already-existing trial transcript supplemented to the certified record for our review and Appellant clearly attempted to secure inclusion of that transcript in the certified record in the first place, we will not penalize Appellant for his procedural non-compliance with our rules of appellate procedure.

- 4 -

than merely present at or near the location of the firearm." Appellant's brief at unnumbered 9. Whether the evidence was sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry, we

> examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

***Commonwealth v. Doughty***, 126 A.3d 951, 958 (Pa. 2015).

The crime of person not to possess a firearm criminalizes the following:

**(a) Offense defined.**—

> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).

Appellant solely challenges the element of possession. Since Appellant was not in actual possession of the firearm, the Commonwealth's case rested on constructive possession, which is "a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." ***Commonwealth v. Mudrick***, 507 A.2d 1212, 1213

(Pa. 1986). The Commonwealth must establish "conscious dominion," which is defined as "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa.Super. 2004) (citation omitted). In assessing whether the Commonwealth has established the power and intent to exercise control, we look to the totality of the circumstances:

> Constructive possession may be proven by circumstantial evidence and the requisite knowledge and intent may be inferred from examination of the totality of the circumstances. Moreover, we review circumstantial evidence under the same standard as direct evidence, *i.e.*, that a decision by the trial court will be affirmed so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa.Super. 2016) (quotation marks and citations omitted). "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." *Commonwealth v. Valette*, 613 A.2d 548, 551 (Pa. 1992). Thus, we have established that a minimum requirement in constructive possession cases is that the defendant have knowledge of the item's existence. *Commonwealth v. Hamm*, 447 A.2d 960, 962 (Pa.Super. 1982) ("At the least, the evidence must show that the defendant knew of the existence of the item.") (citations omitted).

In support of his argument that the evidence of possession was insufficient, Appellant highlights Mrs. Salmond's testimony that the firearm was hers, she placed it in her bed in her bedroom, and Appellant did not sleep

there the evening before the warrant execution, as well as the corroborative evidence that Mrs. Salmond was the registered owner of the firearm.[3] Appellant emphasizes that police first observed Appellant in the second-floor hallway, not in the bedroom. Regarding the Commonwealth's evidence that Appellant had text messages and pictures relating generally to firearms on his phone, Appellant notes they did not reference the charged firearm. Finally, he argues that the forensic testing resulted in no fingerprint or DNA evidence linking him to the firearm. Thus, Appellant contends that although he "knew that firearms were present" in the home, the evidence failed "to establish even a tepid showing of dominion, control and/or intent on the part of Appellant." Appellant's brief at unnumbered 10.

"[W]here another person has equal access to the area where [a] weapon is found, the defendant cannot be said to have either the power to control or the intent to control such . . . weapon *per se.*" ***Commonwealth v. Heidler***, 741 A.2d 213, 216 (Pa.Super. 1999) (*en banc*). Nevertheless, equal access is not an affirmative defense, as more than one person can constructively possess an item. ***Commonwealth v. Macolino***, 469 A.2d 132, 136 (Pa. 1983) ("It is no defense that the appellee's wife could also have maintained a conscious dominion over the cocaine. Possession of an illegal

---

[3] We note that this aspect of Appellant's argument goes to the weight of the evidence rather than sufficiency. ***See Commonwealth v. Smyser***, 195 A.3d 912, 916 (Pa.Super. 2018) (citations omitted) ("An argument that the finder of fact should have credited one witness's testimony over that of another goes to the weight of the evidence, not the sufficiency of the evidence."). As noted *supra*, Appellant has waived any weight claims.

substance need not be exclusive; two or more can possess the same drug at the same time."). We have held that "it is possible for two people to have joint constructive possession of an item of contraband." *Commonwealth v. Kinard*, 95 A.3d 279, 292 (Pa.Super. 2014) (*en banc*). Therefore, the fact Mrs. Salmond had equal access is simply a relevant consideration under the totality of the circumstances.

Upon review, we are satisfied that the totality of the circumstances warrants affirmance. The threshold requirement of knowledge of the item's existence was unquestionably met, as conceded by Appellant. *See* Appellant's brief at unnumbered 10 ("The totality of the above facts shows that Appellant knew that the firearms were present[.]"). At trial, the Commonwealth presented security videos of Mrs. Salmond's purchase of, *inter alia*, the charged firearm.[4] In the video clip related to that purchase, Investigator Errington testified that Appellant was with Mrs. Salmond and can be seen pointing out various firearms to her and handing her cash prior to her purchasing the firearm. *See* N.T. Trial, 4/13-14/21, at 85-86. According to Investigator Errington, Appellant stated that he slept on the right side of the bed. Significantly, it was under the right-side pillow that police recovered the charged firearm along with a magazine and bag of rounds. *Id*. at 56-58, 69. In fact, it was Appellant who told Investigator Errington that Mrs. Salmond

_____

[4] The video was not transmitted as part of the certified record. As Appellant does not challenge the testimonial descriptions of the videos offered at trial, we rely on those.

placed the firearm under the pillow, thereby further establishing his knowledge of the firearm's presence. *Id*. at 76, 111.

Contrary to Mrs. Salmond's testimony that Appellant was not in the bedroom the evening before the search, when police forcefully entered the home after knocking and announcing their presence at approximately 6:00 a.m., Appellant was observed standing immediately outside the bedroom. *Id*. at 138-39. Finally, the text messages bolstered Appellant's intent and power to possess the charged firearm by demonstrating his ability and intent to control firearms generally despite being aware that he was legally not permitted to do so.

Based on the totality of the circumstances, the Commonwealth proved beyond a reasonable doubt that Appellant knew of the charged firearm's existence and had the power and intent to control the firearm. Accordingly, Appellant is not entitled to relief on this claim.

We next review Appellant's claim challenging the trial court's denial of his request for a mere presence jury instruction. In his brief, he presents a four-sentence argument covering both this issue and the court's denial of a curative instruction to the Commonwealth's purported prosecutorial misconduct:

> The trial court properly gives a jury instruction if there is an evidentiary basis on which the jury could find the element, offense, or defense that is the subject of the instruction.
>
> Here, the Commonwealth presented three witnesses before the jury, none of whom placed Appellant near the firearm for

purposes of establishing constructive possession. The Commonwealth in closing argument attempts to place Appellant inside of the same bedroom with the firearm by stating that Appellant's cell phone was depicted in a photo at "the side of the bed that the defendant claimed to have slept on, right at the floor in front of the Gatorade bottle, there is a cellphone that was recovered."

By placing Appellant in the bedroom and on the opposite side of the bed, even if by inference, Appellant was thus entitled to the appropriate instruction to the jury on the law.

Appellant's brief at unnumbered 11-12 (citation and unnecessary capitalization omitted).

In considering this claim we observe the following:

Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

***Commonwealth v. Snyder***, 251 A.3d 782, 790 (Pa.Super. 2021) (cleaned up). With respect to the particulars of Appellant's arguments,

[t]he law is clear that a defendant cannot be convicted of a crime where the only evidence to connect him with the crime is mere presence at or near the scene. The converse is that something more than mere presence at the scene of the crime must be shown to convict one of the participants in the commission of the crime. It does not follow, as a corollary of this rule, that the jury must be instructed in every case that mere presence is insufficient to convict. Where a jury is fully and adequately instructed on the elements of a crime, and where it appears that a charge on mere presence is not essential to their understanding of the case, the trial court may refuse to issue a specific instruction on mere presence.

- 10 -

***Commonwealth v. La***, 640 A.2d 1336, 1344 (Pa.Super. 1994) (cleaned up).

Here, Appellant requested Suggested Standard Jury Instruction (Criminal) § 16.02(B), which relates to constructive possession of controlled substances. N.T., Trial, 4/13-14/21, at 181. This instruction provides as follows:

> **16.02(B)A CONTROLLED SUBSTANCE, "POSSESSION" DEFINED**
>
> 1. For an individual to "possess" [a controlled substance] [or] [a counterfeit controlled substance], three things are necessary:
>
> > *One*, the item must be a ["controlled substance"] [counterfeit controlled substance];
> >
> > *Two,* the individual must be aware of the presence and nature of the substance. [. . . In other words, he or she must know where and what the substance is]; and
> >
> > *Three*, the individual must have the intent to control and the power to control the substance.
>
> 2. A person does not possess a controlled substance merely because he or she is aware of the presence and nature of the substance or because he or she is physically close to it. Although proof of such facts may be evidence tending to show possession, such facts do not of themselves establish the necessary intent and power to control.
>
> 3. Possession means, first, what it means in ordinary usage. Someone is knowingly holding, carrying, or otherwise directly controlling the possession of, an item.
>
> 4. A person can be guilty of possessing an item even when he or she is not holding it, touching it, or in the same area as the item. That type of possession is what the law calls constructive possession. For there to be constructive possession, it must be proved beyond a reasonable doubt that the individual had both the intent to control the item and the power to control the item.

5. In determining whether or not the defendant had possession of a controlled substance, you should consider evidence of all facts and circumstances that may shed light on the question of whether the defendant had the intent to control and the power to control that substance.

6. Two or more persons may have joint possession of a controlled substance, provided each has the intent to exercise joint control over that substance and that each has the power to control it. Each of the joint possessors is regarded as having possession of the substance for purposes of the criminal law.

7. I finally charge you that a defendant may be found guilty of possession, for an item that he or she did not personally hold, if it is proved that the defendant was part of a conspiracy, another conspirator knowingly possessed drugs, and that possession occurred while the conspiracy was in existence and was in furtherance of the goals of the conspiracy.

8. As I have explained when defining the crime[s] involved here, possession must be proved beyond a reasonable doubt.

Pa. SSJI (Crim) § 16.02(b)A.

The trial court denied Appellant's request because it "would deprive the Commonwealth of the inference of knowledge to which it was entitled to present to the jury" based on the evidence. Trial Court Opinion, 7/20/21, at 11; *see also* N.T. Trial, 4/13-14/21, at 182. In its opinion to this Court, the trial court contended that it ultimately "provided instruction consistent with that requested [by d]efense [c]ounsel, and because [its] instruction correctly and adequately stated the law, . . . Appellant's alleged error is without merit." Trial Court Opinion, 7/20/21, at 12.

At trial, the court instructed the jury in relevant part as follows:

For a person to possess a firearm, he must have the intent to control and the power to control the firearm. **A person does not possess a firearm merely because he is aware of the**

- 12 -

**presence of the firearm or because he is physically close to it. Although proof of such facts may be evidence tending to show possession, such facts do not of themselves establish the necessary intent and power to control.**

Possession means first what it means in ordinary usage, someone is knowingly holding, carrying, or otherwise directly controlling possession of the [item]. A person can be guilty of possessing an item even when he is not holding it, touching it, or in the same area as the item. That type of possession is what the law calls constructive possession. For there to be constructive possession, it must be proved beyond a reasonable doubt that the individual had both the intent to control the item and the power to control the item.

In determining whether or not the defendant had possession of a firearm, you should consider evidence of all the facts and circumstances that may shed light on the question of whether the defendant had the intent to control and the power to control that firearm. Two or more persons may have joint possession of a firearm provided that each has the intent to exercise joint control over that firearm and that each has the power to control it. Each of the joint possessors is regarded as having possession of the firearm for purposes of the criminal law. As I have explained when defining the crime involved here, possession must be proved beyond a reasonable doubt.

N.T. Trial, 4/13-14/21, at 188-89 (emphasis added).

Our review of the court's instructions reveals that the charge properly conveyed to the jury that it may not find the element of possession based upon Appellant's mere presence near the firearm. As the trial court accurately instructed the jury on mere presence within its instruction on possession, we conclude the trial court did not abuse its discretion in refusing to give a separate mere presence instruction based upon constructive possession of a controlled substance. Accordingly, Appellant is not entitled to relief on this claim.

Finally, we consider Appellant's related claims of prosecutorial misconduct and the trial court's denial of Appellant's request for a curative instruction. By way of background, during closing argument the Commonwealth referenced Commonwealth Exhibit 10, which is a picture of the right side of the bedroom and details the right side of the bed, the adjacent dressers, and the floor between the bed and the dressers. In context, the Commonwealth argued the following while displaying this exhibit to the jury:

> You heard testimony that the police knocked and announced at around 6:00 in the morning. Nobody answered after a reasonable time so they had to force entry. We heard from [Mrs. Salmond] that [Appellant] was downstairs when this happened. We heard from the officers that he was upstairs. I'm going to say right off the bat, I submit to you [Mrs. Salmond's] testimony is incredible; and if you find she's not credible, you can completely discount any and all of her testimony. The reason for that being when police searched the upstairs bedroom where they found the firearms, Commonwealth's Exhibit 10, the side of the bed that [Appellant] claimed to have slept on, right at the floor in front of that Gatorade bottle, there's a cell phone that was recovered. Zooming out a little bit, we look on the bed, there appears to be a man's robe and towel.

N.T. Trial, 4/13-14/21, at 171.

Notably, Appellant did not object during the Commonwealth's closing argument or immediately thereafter. Instead, at the conclusion of the Commonwealth's closing argument, the court dismissed the jury and the matter was adjourned for the day. The next morning, Appellant's counsel

- 14 -

requested a curative instruction.[5] Generally, the absence of a contemporaneous objection in the trial court constitutes waiver of prosecutorial misconduct claims. *See Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008). However, when there has been a delayed objection,

> [o]ur Supreme Court has held that such a delay does not result in waiver so long as: (1) there is no factual dispute over the content of the prosecutor's argument (*e.g.,* the argument was recorded and available for review at trial); and (2) counsel objects immediately after closing argument with sufficient specificity to give the court the opportunity to correct the prejudicial effect of the improper argument. *Commonwealth v. Adkins*, 364 A.2d 287, 291 (Pa. 1976)[.]

*Commonwealth v. Rose*, 960 A.2d 149, 154–55 (Pa.Super. 2008) (cleaned up).

Here, there is no factual dispute as the proceedings were transcribed. Regarding the second prong, the trial court denied Appellant's request for a curative instruction not because it was impossible at that point to correct any prejudicial effect, but because it concluded, based on its memory of the testimony offered, that any such instruction would only confuse the jury. N.T. Trial, 4/13-14/21, at 181. Thus, we find that Appellant did not make an unreasonable delay in objecting and he has not waived this issue on appeal.

---

[5] Appellant's failure to request a mistrial does not impact the preservation of his prosecutorial misconduct claim. *See Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa.Super. 2013) ("Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver."). Since Appellant requested a curative instruction, the claim is not waived.

Turning to the merits of this claim, we observe that "[o]ur standard of review of a trial court's decision to reject a claim of prosecutorial misconduct is limited to a determination of whether the trial court abused its discretion." *Commonwealth v. Rivera*, 939 A.2d 355, 357 (Pa.Super. 2007) (cleaned up).

> It is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. Like the defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury.
>
> In addition, a challenged prosecutorial comment must be viewed not in isolation but in the context in which it was made. We will not find prosecutorial misconduct from comments based on the evidence or derived from proper inferences. Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

*Commonwealth v. Scott*, 212 A.3d 1094, 1110 (Pa.Super. 2019) (cleaned up).

In its Rule 1925(a) opinion, the trial court reiterated its trial reasoning that any curative instruction would only have confused the jury, and regardless, the court provided instruction that the arguments of counsel are not evidence and should not be considered as such. *See* Trial Court Opinion, 7/20/21, at 12-13. At trial, the court stated the following in response to Appellant's objection and request for a curative instruction:

I don't recall there being testimony specifically to the effect that what appeared to be a cell phone in that photograph was the cell phone from which the extraction was made which then became part of the exhibits. All that's going to do to give such an instruction, at this point all it's going to do is confuse everybody.

N.T. Trial, 4/13-14/21, at 181.

As discussed *infra*, although no testimony was offered directly linking the phone in Exhibit 10 to the phone that was searched, the evidence presented at trial supported that inference. However, because the trial court and Appellant confused the sides of the bed, they were unable to make that inference. In its Rule 1925(a) opinion, the trial court states that Investigator Seiler "stated that the cell phone he personally recovered and retrieved the text messages from was located on the left side of the bed on the floor in the bedroom." Trial Court Opinion, 7/20/21, at. However, Investigator Seiler testified, with regards to the phone, as follows: "It was a black Apple iPhone. It was located inside of the room on the floor on the right side of the bed in that second-floor front bedroom." N.T., 4/13-14/21, at 139-40.

By enlarging a portion of Exhibit 10 and stating that Appellant's cell phone was depicted at the side of the bed where Appellant purportedly claimed to sleep and the charged firearm was recovered, Appellant claims the "Commonwealth intentionally mislead [*sic*] the jury by indicating that Appellant stated that he slept on the left side of the bed where the phone was recovered. The testimony by the . . . police officer was the exact opposite" and the argument that the phone in the photograph belonged to Appellant

- 17 -

"was inaccurate and misleading." Appellant's brief at unnumbered 12-13. Stated simply, Appellant contends that the testimony revealed he slept on the right side of the bed, while Exhibit 10 depicts what he refers to as the left side of the bed, and that there was no evidence indicating the phone in Exhibit 10 belonged to him. We conclude that the evidence presented at trial does not support this tortured argument.

At trial, Investigator Errington testified that Appellant identified the side of the bed depicted in Exhibit 7 as the side of the bed on which he slept. N.T. Trial, 4/13-14/21, at 56-57. Exhibit 7 depicts the right side of the bed from the perspective of standing at the foot of the bed. Again, for reference, it is the side of the bed adjacent to the dressers.[6] The charged firearm was recovered from under the pillow on the side of the bed adjacent to the dressers. Exhibit 10 depicts that same side of the bed. Thus, as noted hereinabove, the certified record reveals that the investigators consistently referred to the "right side" of the bed based upon the perspective from the foot of the bed. Regardless of whether it was technically the right or the left side, Exhibit 10, the location of the charged firearm, and Appellant's side of the bed all were the same side.

Having settled the sides of the bed, we turn to the Commonwealth's statement that the phone in Exhibit 10 belonged to Appellant. At trial,

---

[6] By contrast, the other side of the bed is adjacent to a window and is the side of the bedroom from where the holstered firearm was recovered.

Appellant stipulated that the cell phone that was retrieved and searched was his cell phone. *Id*. at 136. Investigator Seiler testified that he performed the extraction on that phone, which was a black Apple iPhone that was located inside the bedroom on the floor of the right side of the bed. *Id*. at 139-40. Exhibit 10 depicted the right side of the bed, the two dressers, and the floor in between. Again, this is the same side of the bed where the charged firearm was recovered and Appellant told Investigator Errington that he slept. While Investigator Seiler was not shown Exhibit 10 to identify that phone as the phone he searched, the Commonwealth was permitted to argue this reasonable inference in closing and did not mislead the jury. *See Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa.Super. 2009) (citation omitted) ("It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence."). Accordingly, we conclude that the trial court did not abuse its discretion in refusing to give a curative instruction.[7]

Having found no merit to Appellant's issues on appeal, we affirm his judgment of sentence.

Judgment of sentence affirmed.

---

[7] This Court "may affirm for reasons other than those given by the trial court." *Commonwealth v. McCarthy*, 180 A.3d 368, 376 n.8 (Pa.Super. 2018) (citation omitted).

Judge Colins joins this Memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2022