J-A04031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL MARTINEZ | : | |
| | : | |
| Appellant | : | No. 1052 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007000-2018

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 21, 2022**

This direct appeal returns to us after we granted reconsideration on the sole issue of whether the court erred in admitting an audio recording. We had initially found the issue waived because Martinez failed to ensure the audio recording's inclusion in the certified record. We granted reconsideration and allowed Martinez to supplement the record. ***See*** Order, entered 7/08/22 (per curiam). We now address this issue, reaffirm in part our prior decision, and remand for further proceedings.

According to the trial testimony, on the morning of August 12, 2018, Martinez attempted to convince the victim, Martinez's then-wife, not to divorce him. The victim went to work, and Martinez texted her several times. When she returned home, Martinez was standing by the back door. N.T., 6/13/19, at 30, 36. When the victim attempted to walk past him, Martinez tried talking to the victim, but she declined. ***Id.*** at 37. Martinez grabbed the victim's arm,

and when she tried to pull away, he reached up her skirt and pushed his fingers inside of her vagina. *Id.* at 37-40. He then removed his fingers and said, "You dirty fucking whore, I knew it." *Id.* at 38. The victim went inside and called her sister and her divorce attorney. *Id.* at 38-39. The victim later called the police who eventually arrested Martinez. *Id.* at 39, 111.

The Commonwealth charged him with several crimes including aggravated indecent assault (lack of consent).[1] The Commonwealth filed a motion *in limine* to admit text messages, emails, and an audio recording of a conversation between the victim and Martinez. The full length of the audio recording was eight minutes and 38 seconds and was recorded in June 2018, two months before the instant assault. *See* N.T. 6/13/19, at 54; Commonwealth's Ex. 8. The Commonwealth argued that in the recording, "[the victim] makes these accusations that you did this to me, and he adopts them and makes excuses for why he did these things." N.T., Motion Volume 1, 5/6/19, at 10. The Commonwealth maintained that the audio "covers the incident about the assault in the shower and the mudroom." *Id.*

Defense counsel countered that the evidence was more prejudicial than probative. He argued that "none of this is admissible under 404(b). And it is all going towards bad character and propensity[.]" *Id.* at 14. Counsel also argued that Martinez's intent was irrelevant because it was not an element of the crime. *Id.* at 15.

---

[1] 18 Pa.C.S.A. § 3125(a)(1).

The court ruled that the audio recording was admissible. *Id.* at 24. This ruling was limited to the portion that the Commonwealth had played during the hearing on the motion in *limine* which the parties agree was an edited version of the recording. *See* Martinez's Br. at 17 (stating recording played for jury was four minutes); *accord* Commonwealth's Br. at 5 ("The jury also heard an edited version of the June 2018 audio recording").

Martinez proceeded to a jury trial. Relevant to this appeal, the Commonwealth introduced the edited audio as Commonwealth's Exhibit 8. *See* N.T., Trial, 6/13/19, at 54. The Commonwealth also introduced a transcription of the recording. *See* Commonwealth's Ex. 9. Before, during, and after the recording was played, counsel made no objections. *See* N.T., Trial, 6/13/19, at 54. The jury found Martinez guilty of aggravated indecent assault (lack of consent). At sentencing, the trial court considered sentencing memoranda from both parties, a Pre-Sentence Investigation report ("PSI"), a mental health evaluation, a victim impact statement, the conviction, letters admitted as part of the memoranda, and Martinez's allocution. *See* N.T., Sentencing, 10/8/19, at 12. The court imposed a sentence of three to six years' incarceration followed by three years' reporting probation.

Martinez filed a post-sentence motion challenging his sentence, the court's ruling on the Commonwealth's motion *in limine*, and the sufficiency and weight of the evidence. Post-Sentence Mot., filed 10/17/19. The motion was denied by operation of law and this timely appeal followed.

We now review Martinez's challenge to the court's admission of the audio recording. He argues that the evidence only "showed that because [Martinez] used foul language towards the Complainant in February, he was more likely to act in conformity therewith and engage in distasteful behavior in August." Martinez's Br. at 24. Martinez further maintains that the Commonwealth played a portion of the audio recording that the court ruled inadmissible. *See id.* at 20. He also argues that the *res gestae* exception is inapplicable "because the contents of the . . . audio recording are not part of the same transaction involving the charged crime." *Id.* at 24.

We review rulings on the admission of evidence for an abuse of discretion. *See Commonwealth v. Elliott*, 80 A.3d 415, 446 (Pa. 2013). To be admissible, evidence must be relevant. Pa.R.E. 402. This means that "it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or presumption regarding a material fact." *Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019) (citation omitted). Nonetheless, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). This type of evidence is commonly known as "bad acts" evidence. *See Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017). Bad acts evidence may be admissible if it is offered for another, proper purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident." Pa.R.E. 404(b)(2). Where bad acts evidence is offered for a proper purpose in a criminal case, the probative value of the evidence must outweigh its potential for unfair prejudice. *Id.*

Bad acts evidence may also be admissible under the *res gestae* exception. This exception permits the admission of evidence of other crimes or bad acts to tell "the complete story." *See Commonwealth v. Hairston*, 84 A.3d 657, 665 (Pa. 2014). It applies where the other crimes or bad acts "were part of a chain or sequence of events which formed the history of the case and were part of its natural development." *Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa.Super. 2012) (citation omitted).

Here, the trial court concluded that the bad acts evidence, including the audio, demonstrated Martinez's ill-will and intent towards the victim and showed Martinez's previous physical threats towards the victim. Trial Court Opinion, filed 1/12/21, at 7. It also concluded that the evidence was admissible under the *res gestae* exception since the evidence "explained the history and course of events between the victim and [Martinez]." *Id.*

Martinez's claim that the Commonwealth played a portion of the audio that the court ruled as inadmissible is waived because Martinez failed to make a timely and specific objection at trial. *See* N.T., Trial, 6/13/19, at 54; *Commonwealth v. Marrero*, 217 A.3d 888, 890 (Pa.Super. 2019)

(reiterating that "a party must make a timely and specific objection at trial in order to preserve an issue for appellate review").[2]

Moving on to the remainder of the recording, we discern no abuse of discretion in admitting the audio recording. The recording contained admissions by Martinez of his prior abuse towards the victim, such as attacking her while she was showering and choking her in a mud room. **See** Commonwealth's Ex. 9 at 1 (unpaginated). The recording also contained Martinez's admission that he "snapped" when he saw what he described as "nasty texts" from his brother to the victim. **Id.** The victim said that she would never "be with" her son's uncle and that the messages were not a reason to choke her. **Id.** Martinez replied, "I snapped," and, "I'm sorry." **Id.**

The evidence of the history of Martinez's acts towards his wife were relevant and admissible to show his ill will and thus his motive and intent. Although the statute defining aggravated indecent assault (lack of consent) does not state a *mens rea*, the Crimes Code provides that in such a case, the Commonwealth must prove that the defendant acted intentionally, knowingly, or recklessly with respect to material elements of the offense. **See** 18 Pa.C.S.A. § 302(c); **Commonwealth v. Carter**, 418 A.2d 537, 539 (Pa.Super. 1980).

_____

[2] Before trial began, counsel explained that to avoid constantly objecting before the jury, he was placing a standing objection to the court's grant of the admission of evidence presented in the Commonwealth's motion *in limine*. **See** N.T., 6/13/19, at 24-26. This standing objection, however, did not remove counsel's responsibility to make a specific objection to evidence that he knew the court had ruled as inadmissible. **See Marrero**, 217 A.3d at 890.

The recording was proper evidence to prove *mens rea*. It demonstrated Martinez's belief that his wife was having an affair, which he also accused her of on the day of the sexual assault. It also showed the progression of Martinez's aggression towards his wife, including physical abuse, and eventually leading to the sexual assault in the instant case. **See Commonwealth v. Powell**, 956 A.2d 406, 420 (Pa. 2008) (concluding evidence of defendant's previous assault of victim was admissible to show the nature of their relationship and a pattern of abuse); **Commonwealth v. Dillon**, 925 A.2d 131, 139 (Pa. 2007) (concluding defendant's prior abuse towards victim's family was admissible to explain the context of events leading to sexual assault); **Commonwealth v. Jackson**, 900 A.2d 936, 940-41 (Pa.Super. 2006) (concluding escalation of defendant's physical and sexual abuse of victim ultimately leading to her murder was admissible to show the history of the case and establish defendant's motive and ill will towards the victim). The audio therefore was admissible to explain the escalation from verbal to physical to sexual abuse, and thus, motive. **See Brown**, 52 A.3d at 326.

Though Martinez claims that the *res gestae* exception does not apply to the instant case because the recording was allegedly not part of the same transaction as the sexual assault, we disagree. The *res gestae* exception applies where the acts "are so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case

before the jury without the evidence being rendered thereby unintelligible." *Id.* at 330-31 (citation omitted) (emphasis removed).

Here, Martinez's prior abusive acts completed the story and enabled the jury to understand the escalation of his conduct towards his wife, leading to the sexual assault. *See Powell*, 956 A.2d at 420; *Dillon*, 925 A.2d at 139; *Jackson*, 900 A.2d at 940-41. The court properly admitted the audio.

We now reaffirm our prior disposition. Martinez raises the following issues:

> 1. Whether the trial court committed an abuse of discretion when it granted the Commonwealth's motion to admit text messages, emails, and an audio recording under Pa.R.E. 404(b).
>
> 2. Whether the court failed to consider the factors set forth in 42 Pa.C.S.A. § 9721(b) when it sentenced [Martinez] to 3 to 6 years['] incarceration plus 3 years['] probation.
>
> 3. Whether [Martinez's] lifetime registration requirement is violative of his due process rights pursuant [to] the Supreme Court's holding in *Commonwealth v. Torsilieri*.

Martinez's Br. at 4 (answers omitted).

*Text Messages*

Martinez maintains that following message was inadmissible. We reprint it verbatim:

> fuck all you caddi gossip talking people belitting uneduacted non-English knowing drama queens y aim not afraid to text I have plenty of text from you the complete conversation of text for 10 months beleive me I have plenty to show your abusive ways too and there is no turning back i gave you time to rethink this but instead you want to stick your head up your sister's ass

Commonwealth's Exhibit 6.

Martinez sent this text to the victim on the day of the assault, prior to assaulting her. **See** N.T., 6/13/19, at 31, 34. Martinez claims that the message was irrelevant and that the trial court erred in admitting it to show intent since intent is not an element of aggravated indecent assault (lack of consent). **See** Martinez's Br. at 21.

We find no abuse of discretion. This message, in conjunction with the other evidence, was relevant to demonstrate the progression of Martinez's aggression towards the victim, from continued harassment to the incident at issue. **See** N.T., 6/13/19, at 31, 34-35 (discussion of text messages sent from Martinez to the victim on the day of the assault). The message was admissible to explain the escalation from verbal to sexual abuse, and thus motive. **See** **Brown**, 52 A.3d at 326.

The evidence was also relevant to *mens rea*. Contrary to Martinez's contention, there is an "intent" element to aggravated indecent assault (lack of consent). As we previously stated, when a statute is silent as to the required mens rea the Commonwealth must prove that the defendant acted intentionally, knowingly, or recklessly with respect to material elements of the offense. **See** 18 Pa.C.S.A. § 302(c); **Carter**, 418 A.2d at 542-43. The evidence of the history of Martinez's increasing acrimony and aggression, together with the testimony describing the events of the specific incident in question, were relevant to prove that Martinez was at least reckless as to the lack of consent.

*Emails*

We have reprinted the content of the contested emails verbatim:

> I already am im done with your whore ass and im as serious as can be I put you and your family ahead of everything for years even being a father to your boys canceling my surgery so you can hand your boys 400 bucks and my kids got a merry Christmas text I don't care who you fuck who sticks in your mouth asshole cunt I don't care but I am recouping what is due to me through the court not what you say but what the court says and if you want to talk to my attorney when I get yourself fine but im telling you im doing it and im not playing so you better retain council because its coming i9m sick of your abuse of me because your to fucking stupid to understand you're a no good WHORE who I should have never married you are scum

> don't turn my phone on now or ever the damage is done and just think if I had the ability to shut your phone off I never would because I know it doesn't just affect you just like shutting my phone off doesn't affect me don't say 2 words to me don't send anyone to speak to me do not write letters send smoke signals or anything else you want it you got it now im done sitting around doing nothing I am getting a lawyer you better get one too because I am serous you kunt

> Really its a slang and has no proper spelling but I know the difference between wear, ware and where I know the difference between great and frate if you got tested your IQ would be lower than a moron or mongoloid you are you are functionally illiterate that's why your paycheck reflects it and your real estate school is a waste in the chance you do pass, you will never use it to sell a house this is bartending school all over you dope

Commonwealth's Exhibit 5 (victim's responses omitted). For these messages, Martinez's argument is the same as for the text message, *i.e.*, the messages are not admissible under the *res gestae* exception, and they are not admissible to prove his intent because his intent is irrelevant.

Here, the trial court concluded that the messages were relevant and admissible because they showed Martinez's previous accusations of the victim's alleged infidelity. 1925(a) Op., at 7. It also concluded that like the texts, the emails were admissible under *res gestae* to explain "the history and course of events between the victim and [Martinez]." ***Id.*** The trial court properly admitted these emails.

As with the text messages, the emails were admissible to explain the escalation from verbal to sexual abuse, and thus motive. ***See Brown***, 52 A.3d at 326. The emails were also admissible under the *res gestae* exception as the messages served to explain the intensifying aggression that led to the eventual assault of the victim. The messages included multiple references to Martinez's belief that there was infidelity on the part of the victim, of which he accused her when he assaulted her in the instant case. Furthermore, as with the text message, the emails proved Martinez's recklessness as to the lack of consent. ***See*** 18 Pa.C.S.A. § 3125(a)(1); 18 Pa.C.S.A. § 302(c) (stating where statute is silent as to culpability to establish a material element, the element is satisfied where the individual acts intentionally, knowingly, or recklessly); ***Commonwealth v. Cosby***, 224 A.3d 372, 419 (Pa.Super. 2019), *vacated on other grounds*, 252 A.3d 1092 (Pa. 2021), (concluding recklessness to be the requisite *mens rea* of Section 3125(a)). We discern no abuse of discretion by the trial court in admitting the emails.

Martinez also challenges the discretionary aspects of his sentence. There is no automatic right to appellate review of such a challenge. ***See***

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa.Super. 2013). To obtain review of such an issue, the appellant must have: 1) timely filed a notice of appeal; 2) preserved the issue in a post-sentence motion or at sentencing; 3) included a Pa.R.A.P. 2119(f) statement in the brief; and 4) raised a substantial question. *See id.*

Here, Martinez has met these prerequisites. He filed a timely notice of appeal, preserved the challenge to his sentence in a post-sentence motion, and included a Rule 2119(f) statement in his brief. He also raises a substantial question that the court imposed "a sentence without considering the required factors under 42 Pa.C.S.[A.] § 9721(b)." Martinez's Br. at 16; *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa.Super. 2006) (concluding that claim that court failed to consider required factors under Section 9721(b) raises a substantial question).

Martinez alleges that the record does not show "that the court considered . . . the protection of the public, the gravity of the offense as it relates to the community, or the rehabilitative needs of [Martinez] in imposing sentence." Martinez's Br. at 29. He states that he had a prior record score of zero at the time of sentencing and some charges were *nolle prossed* by the Commonwealth. *Id.* at 28, 29. He argues that "it is unclear whether the additional charges played a role in the court's determination." *Id.* at 30.

The record belies Martinez's argument. At the sentencing hearing, the trial court stated that it considered Martinez's convictions, the Pre-Sentence Investigation Report ("PSI"), the mental health evaluation, the sentencing

memorandum from both parties, the victim impact statement, and the testimony from trial. *See* N.T., Sentencing, at 12. Because the court considered a PSI, we presume it was "aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa.Super. 2009) (citation omitted). Additionally, Martinez's speculative claim that the court might have considered the *nolle prossed* charges has no support in the record. We discern no abuse of discretion by the trial court.

Martinez's final claim challenges his lifetime registration under SORNA. He maintains that the registration violates his due process rights because "it impairs his right to reputation through the utilization of an irrebuttable presumption, deprives him of the requisite notice and opportunity to be heard[.]" Martinez's Br. at 30-31 (footnote omitted). He also alleges that the required registration "violates *Apprendi* and *Alleyne* by allowing the imposition of enhanced punishment based on an irrebuttable presumption of future dangerousness that is neither determined by the finder of fact nor premised upon proof beyond a reasonable doubt."[3] *Id.* at 31 (footnotes omitted). Martinez cites our Supreme Court's decision in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020), and argues that the case should be remanded in accordance with *Torsilieri*.

---

[3] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013).

- 13 -

In **_Torsilieri_**, the defendant challenged his registration requirements under Subchapter H of SORNA, which governs registration for offenders whose relevant convictions occurred on or after December 20, 2012. He maintained that Subchapter H violated his due process rights because it imposes lifetime registration requirements based on an allegedly unconstitutional irrebuttable presumption of dangerousness. The trial court determined that Subchapter H was unconstitutional and vacated Torsilieri's sentence as to his registration requirements. On discretionary appeal, our Supreme Court determined that the factual record was insufficient to render a decision on the merits of Torsilieri's challenge to Subchapter H. It therefore remanded to the trial court for development of the record. **_See Torsilieri_**, 232 A.3d at 596.

Although Martinez did not raise this issue before the trial court, such an issue may be raised for the first time on appeal since it implicates the legality of his sentence. **_See Commonwealth v. Thorne_**, 276 A.3d 1192, 1198 (Pa. 2022). And because Martinez raised this issue for the first time before this Court, the record is inadequate for us to dispose of his claim. As such, we remand this case for the trial court to hold a hearing on the constitutional challenges to SORNA that Martinez raised before this Court. **_See Torsilieri_**, 232 A.3d at 596.

Judgment of sentence affirmed. Case remanded for proceedings consistent with **_Torsilieri_**. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/21/2022